STATE ex rel. A. W. VANHAFFTEN v. JAMES EL-
LISON et al., Judges of Kansas City Court of Ap-
peals.

In Banc, December 13, 1920.

1. **COLLATERAL ATTACK: Interlocutory Orders: Appeal from Tem-
porary Injunction.** The rule against permitting collateral attacks
applies to protect interlocutory orders and proceedings of a court
of competent jurisdiction, as well as to its final judgments. A
circuit court, having jurisdiction of the subject-matter and of the
parties, has power to order a temporary injunction and to continue
it in force pending an appeal, and those orders are not open to
collateral impeachment by the parties to the action, or by persons
represented by or in privity with them, as having been collusively
procured.

2. ————: ————: **Action on Tax Bills: Delay in Completing Improve-
ment.** The city had contracted that the improvement of a certain
street should be completed in 130 days; the contractor induced
the owner of an abutting lot to bring injunction against the con-
tractor and the city, to enjoin the work, on the ground that the
street was not a continuous thoroughfare, and the circuit court,
having ruled that it was and that the ordinance was legal, granted
an appeal to the owner, and continued the temporary restraining
order pending the appeal, and the improvement was discontinued
while the appeal was pending; the appellate court having affirmed
the judgment, the work was resumed and completed within proper
time, allowing for the time while the appeal was pending, but
not within 130 days after the contract was made; tax bills were
issued, and the owner of lots, who was not a party to the in-
junction, brought suit to cancel those issued against his property,
alleging they were void because the improvement was not com-
pleted within the time specified; the contractor set up the in-
junction and the pending appeal as a defense, and the reply
charged that they were procured "at the instance and through the
instrumentality of said contractor, and for the purpose of stopping
said work, and said injunction as procured does not operate to
extend the time." *Held*, that the validity of the orders relating
to the injunction were called into question by the reply, and it
is a collateral attack upon their validity, and not being made in
a direct proceeding to have them vacated, the plaintiff cannot avail
himself of that collusive judgment as his ground for having the
tax bills cancelled.

3. ———: ———: **By Stranger.** A person who was a stranger to a judgment, but who acquired subsequently the title asserted to be affected by it, cannot assail the judgment collaterally. A person who acquired lots, against which tax bills had been issued for the improvement of the adjoining street, cannot, in his suit to have the tax bills cancelled on the ground that the improvement was not completed in time, assail, as the result of collusion, a judgment in an injunction suit to enjoin the improvement, in which from an order refusing a temporary writ an appeal was taken, to which suit such subsequent owner was in no wise a party, and which pending appeal is set up in the answer to his petition as an excuse for the delay in completing the improvement. To impeach the judgment and orders in the injunction suit, in a collateral proceeding, such as is one to have the tax bills cancelled is, is a right not available to a stranger to them; and a purchaser who acquires title to abutting lots after the street is improved and the tax bills are issued, is a stranger to a prior judgment in a suit brought by others against the contractor and the city to enjoin the improvement. Such subsequent purchaser of lots against which assessments were made for improvements completed in time after the injunction was finally dissolved, to which he was not a party, has no right or interest which was impaired by the injunctive orders at the time they were made, and consequently he is not in a position to impeach the orders by a suit to cancel the tax bills.

## Certiorari.

RECORD QUASHED.

*John E. Dolman* for relator.

(1) In *certiorari*, to review the opinion of a Court of Appeals reference in the opinion to the pleadings, judgment and orders in the case of McQueen v. VanDeusen, makes them as much a part of the opinion as if fully written out therein. State ex rel. Kansas City v. Ellison, 220 S. W. 498. (2) In holding and deciding that "if it be said that insofar as the decree herein finds that the McQueen case was a sham, it is a collateral attack therein, then it can be said in answer that the plaintiff herein was not a party to the McQueen case, nor in privity with any one who was or should have been a party; hence

his right to show in this case that the McQueen case was in law collusive, is not impaired,'' is in conflict with the prior decisions of this court in the following cases: Wilson v. Rainey, 74 Mo. 234; Jaicks v. Oppenheimer, 264 Mo. 693. And it further appearing in said opinion that plaintiff acquired title to the lot in question the day before he brought his suit, long after the McQueen judgment was rendered, said opinion is also in conflict with Abington v. Townsend, 197 S. W. 253. (3) In holding and deciding that ''we do not regard this case as making any attack upon the McQueen judgment, hence no question of collateral attack is involved'' said decision is in conflict with the prior decisions of this court in Lovitt v. Russell, 138 Mo. 482; Leiber v. Leiber, 239 Mo. 54; Vrana v. St. Louis, 164 Mo. 150; Harter v. Betty, 181 S. W. 40. (4) The holding and deciding that ''no relief against that judgment is sought or granted'' is in effect a holding that the temporary injunction granted in the McQueen case was no part of that judgment and could not be continued in force pending an appeal to the Court of Appeals, which decision is in conflict with the prior decisions of this court in State ex rel. v. Dearing, 180 Mo. 64; Comm. Co. v. Spencer, 236 Mo. 628.

*Eugene Silverman* for respondents.

(1) No question of collateral attack upon the judgment in the McQueen case is involved in the opinion complained of. The question decided arises upon the construction of the improvement contract, and the decision is that delay caused by the contractor cannot be taken advantage of by him for extension of time of performance, and that this is true, even though such delay is because of injunction where such injunction is procured by the contractor against himself. The McQueen case involved the validity of the proceedings prior to the letting of the contract; this case involves the performance of the contract. Hence no matter litigated in the McQueen case is here brought into question. (2) The

opinion complained of is not in conflict with Wilson v. Rainey, 74 Mo. 229. That case is one involving matter of general interest to all the inhabitants of a county. No question of special taxation for special benefits was there involved. That a municipality is the representative of the lot-owners where their interests are distinct and different from the general public has never been held by this court, and that it is not their representative in such cases has been often held in other jurisdictions. 23 Cyc. 1269; Long v. Wilson, 119 Iowa, 267; James v. Louisville, 40 S. W. (Ky.) 912; Tifft v. City of Buffalo, 49 N. Y. Supp. 439; Rork v. Smith, 55 Wis. 67; Murphy v. Summersett, 147 Pac. 202; Loesnitz v. Seelinger, 25 N. E. 1039; Haese v. Heitzeg, 114 Pac. (Cal.) 816. Even where otherwise applicable, the rule of the Rainey case never applies in collusive cases, such as the McQueen case. 2 Black on Judgment, sec. 508; 15 R. C. L. 841, 857. (3) The city was not a necessary party to the McQueen case, and no relief was asked against the city that would not necessarily follow from a granting of relief against the contractor. Prior to the institution of the McQueen case the contractor had entered into contract with the city for the construction of the work, and therefore the city was not defending, either for its own benefit or that of its inhabitants, any action in which it had any legal interest. Under such conditions no estoppel by representation could arise. (4) There is no conflict with the other cases cited in relator's brief. In those cases a party to a former action, and who was actually in court in such action, attempted, in a collateral proceeding, to again litigate matters concluded by such former action. (5) If this case involved a collateral attack upon the McQueen case, Williams would not be barred from making such attack, as he was neither party nor privy to the McQueen case, and that case was a collusive action. Callahan v. Griswold, 9 Mo. 792; State ex rel. v. St. Louis, 145 Mo. 567; 1 Black on Judgments, sec. 260; 2 Black on Judgments, sec. 600; 15 R. C. L. 841, 857; 23

Cyc. 1099.   (6) The holding in Arlington v. Townsend, 197 S. W. 253, has no application.   In that case a party purchasing lands was held bound by a decree previously entered with respect to that same land and directly affecting the title he received.   The purchase was of the "subject-matter of the judgment" (197 S. W. 1. c. 257). The lot owned by Williams was not involved in the subject-matter of the McQueen case.   (7) The opinion in Williams v. VanDeusen does not directly or indirectly deny the right of a court to keep an injunction in force pending an appeal.   There can, therefore, be no conflict with State ex rel. v. Dearing, 180 Mo. 64, or Commission Co. v. Spencer, 236 Mo. 628.

GOODE, J.—The record in this case was brought up from the Kansas City Court of Appeals pursuant to a writ of *certiorari* issued out of this court to the respondents, the judges of said Court of Appeals.   The writ was issued upon the petition of the relator, wherein he alleged that the decision of the Court of Appeals in the case of Willis Williams, Respondent, v. R. W. VanDeusen et al., Appellants, 219 S. W. 395, was in conflict with prior decisions of this court.   Gathering the facts from the opinion of the Kansas City Court of Appeals, we learn the said suit of Williams v. VanDeusen was in equity and was filed to have cancelled a series of five installment tax bills issued against a lot, in the City of St. Joseph, owned by Williams, to pay for paving the street in front of the lot.   The tax bills were cancelled by the decree of the court of first instance as casting a cloud on the title to the lot, and on the appeal of A. W. VanHafften, who is the owner of the bills, and of VanDeusen, the two defendants in the case, the decree was affirmed.

The reason for which the tax bills were cancelled was, that the work of improving the street was not completed by the contractor, in the time prescribed by the ordinance which authorized the improvement.   The con-

285 Mo.—20

tract was awarded to VanDeusen September 24, 1914, signed September 30, 1914, and it allowed one hundred and thirty days for the completion of the improvement. Work was begun October 3rd of said year, but on October 7th was stopped and not resumed until sometime in May or June, 1915, the improvement being finished about November 1, 1915. The cause of the suspension of work was the filing of a suit by Lizzie McQueen against VanDeusen and the City of St. Joseph to enjoin the paving of the street, mainly for the alleged reason that, contrary to the controlling statute, the ordinance to authorize the improvement had extended it over streets having different names, running in different directions, and not parts of a continuous highway. In that suit a temporary restraining order was issued by the circuit court, which was continued in force by an order of said court pending an appeal taken by Lizzie McQueen, from the judgment given against her by the circuit court, to the Kansas City Court of Appeals. The Court of Appeals affirmed the judgment, holding the ordinance in question provided for an improvement along a continuous thoroughfare of the city, not running in a direct line throughout its course nor bearing the same name over its entire length, but, in fact and in law, a single highway, so that the improvements ordered was a single improvement, instead of being separate improvements of different streets.

After the final disposition of the McQueen case (McQueen v. VanDeusen, 189 Mo. App. 492), VanDeusen again went to work and, as stated, completed the performance of his contract about the first of November, 1915, but not within the number of days allowed for completion in his contract with the city. Tax bills were issued to pay the cost of the improvement, five of them constituting an apparent lien against the lot of Willis Williams and casting a cloud upon his title. Williams acquired this lot by gift from the Bowen Investment Company, the lot being of little value because "of a hole

in it.'' The deed to Williams was executed and delivered by the Bowen Investment Company the day before Williams filed the suit to cancel the tax bills, but both Williams and the Investment Company said the conveyance was absolute, and that Williams was the sole owner of the lot when he sued.

Williams asked to have the tax bills cancelled because VanDeusen did not finish the work within the time stipulated, to-wit, 130 days after the date of the contract between him and the city. In defense, Van-Deusen and his co-defendant, Van Hafften, to whom the tax bills had been assigned for value, alleged the completion of the work within the period provided in the ordinance was prevented by the injunction issued in the McQueen case, and that by virtue of a section of the statutes (R. S. 1909, sec. 8840), and of the ordinance passed pursuant to the section, the time fixed for completion was extended for such a period as the contractor might ''be actually and necessarily prevented from pursuing said work by bad weather, a general strike of his employees, or an injunction against him.'' In reply to that answer Williams alleged the said injunction was procured at the instance and through the instrumentality of the contractor, and for the purpose of stopping the work, and that an injunction so procured did not operate to extend the time beyond the period provided in the contract. The circuit court found VanDeusen, the contractor, had instigated the suit of Lizzie McQueen to enjoin the improvement, had maintained said suit through all its stages, and that his sole purpose in doing so was to obtain a judicial determination of the validity of the ordinance for the improvement; that but for the instigation and maintenance of it by the contractor, the injunction suit would not have been brought. Therefore the circuit court held the time stipulated in the contract for the completion of the work was not extended by the writ of injunction issued in the McQueen case.

The Kansas City Court of Appeals said, in its opinion in the Williams case, there was no question that Van-Deusen did instigate and maintain the McQueen suit, but not from any fraudulent or corrupt motive, or for the purpose of securing delay; that it was the widespread opinion in legal circles the ordinance in question was void because it authorized the improvement of several different streets under different names, and the purpose of the McQueen suit, which was brought in a friendly spirit against the contractor and the city, was to determine the validity of the ordinance, the question being a public one, which the city and contractors generally were interested in having settled, as other ordinances of the same kind had been passed and contractors had refused to bid for work authorized by them because of a doubt about whether they were legal. The Court of Appeals said also the city, by its counsellor, defended the McQueen suit through the courts; that an honest and bona-fide effort was made to have the ordinance declared invalid, and the suit was pressed earnestly and faithfully; that no extension of the time for completion of the improvement was formally applied for by VanDeusen, during the pendency of the injunction suit, or granted by the legislative authorities of the city. Said court held, as the circuit court had, that as VanDeusen was the real party in interest in the McQueen suit, and had caused it to be instituted and a restraining order to be issued against himself, he was entitled to no extension of time to finish the work while the temporary writ of injunction was in force. The relator in the present proceeding, VanHafften, insists this ruling of the Court of Appeals permitted a collateral attack on the judgment in the McQueen case by Williams, and therein is in conflict with the decision of this court in these cases: Wilson v. Rainey, 74 Mo. 229; Lovitt v. Russell, 138 Mo. 474, 482; Vrana v. City of St. Louis, 164 Mo. 146, 150; Lieber v. Lieber, 239 Mo. l. c. 54; Harter v. Petty, 181 S. W. 39, 40.

The relator also argues that the decision of the Court of Appeals was erroneous for a different reason, in al-

lowing Williams to collaterally attack the judgment in the McQueen case, and not only erroneous, but in conflict with the decision of this court in Abington v. Townsend, 197 S. W. 253.

In support of the first contention it is argued that the city being a defendant in the McQueen case represented all the lot-owners against whose property tax bills would be issued, and the owners of the lots at the date of said judgment were therefore bound by the judgment.

In support of the second contention the argument is that although Williams was not the owner of his lot at that time, and if, in consequence of that fact he was not represented by the city when the McQueen judgment was rendered, but was a stranger to that suit, nevertheless, as a stranger, he was precluded from attacking collaterally the McQueen judgment, because he acquired title to his lot after the rendition of it and after the tax bills were issued.

I.  The attorney for the relator, Van Hafften, does not contend the decision of the Court of Appeals in the instant case, that the injunction procured by VanDeusen against himself worked no extension of the time in which he was bound to complete his contract, is in conflict with

Collateral Attack. any decision of this court. The proposition invoked for the relator is that the decision of said court permits Williams in the present case to attack collaterally the judgment in the McQueen case, and in that respect is in conflict with the decisions of this court cited above. The reasons for the ruling of the Court of Appeals on the proposition were set forth in the opinion on the motion of VanDeusen for a rehearing. The court said relief against the judgment was not demanded by Williams; that the judgment passed only on the legality of the city ordinance authorizing the improvement of the street; whereas in the present case that question is not determined, but only the question of whether the contractor finished his work within the time

allowed him by the contract; said further that if the decision in the present case is a collateral attack on the McQueen judgment, yet as Williams was neither a party to it nor in privity with any one who was, or should have been a party, he has the right to show the McQueen suit and all the proceedings in it were collusive.

Much is said in the briefs pro and con upon the proposition that this suit is a collateral attack on the McQueen judgment. It is not an attack on the final judgment, as the Court of Appeals had no difficulty in showing, for it does not question the point in decision that the street to be improved was a continuous thoroughfare and the ordinance for its improvement valid. The attempt of the plaintiff McQueen to enjoin the improvement and the issuance of the tax bills to pay for it, failed in both the circuit and the appellate court—both courts held no injunction should be granted. But a temporary injunction had been obtained, presumably in the usual mode by the plaintiff giving a bond of indemnity, and the circuit court thereupon ordering a temporary writ, which was continued in force pending the appeal by another order. What is in dispute here is the effect of those interlocutory judgments or orders, not the final judgment, and the right of Williams to impeach said interlocutory orders. In the motion for a rehearing, the precise point "that the judgment in the McQueen case *granting the injunction*" could not be attacked in this case was pressed in the Court of Appeals, and in the overruling of the motion was decided against the relator. It is not a clear expression of the scope of the inquiry necessary to be made in the present case to say it embraces no more than the issue of whether the work was completed in the time stipulated, which is the theory of the petition. Rightly to dispose of the controversy, the effect of the orders made in the McQueen case must be considered. Therefore the questions for determination by this court as we conceive the case are these:

First: Does the rule of law against collateral attacks apply to the orders relating to the temporary writ

of injunction, to such incidental orders made in the course of a litigation?

Second: Does this suit, contain an attack of that kind?

Third: If it does, was the plaintiff Williams precluded from thus attacking the orders either: (a) Because he or his grantor so far stood in privity with the city as to be bound by the proceedings in the McQueen suit to which the city was a party; or (b) Because, if he was a stranger to those proceedings, he acquired his title after they had occurred?

Fourth: Did the court of appeals decide any point contrary to a previous decision of this court?

Taking up the first question we answer that the rule against permitting collateral attacks applies to protect interlocutory orders and proceedings as well as final judgments, though the doctrine of *res judicata* does not. [Van Fleet on Collateral Attack, sec. 17, p. 21.] In marking out the line of distinction between the two doctrines, that treatise, at page 23, says one difference is that a judgment must be final and on the merits to constitute a bar to the further consideration of the issues in the case on the ground. that they are *res judicata*; "while each and every step taken or order made in the proceeding, whether it concerns the merits or not, is just as impervious to collateral attack as the final judgment on the merits;" further, "that an interlocutory order, no matter how erroneous, if not void, will justify or protect all persons as completely as the final judgment itself. An error therein no more than in a final judgment, is no excuse for disobedience."

The contrary theory, if adopted, would tend to frustrate the policy of the law to prevent matters once judicially determined from being drawn again into litigation. This court has applied the rule in many cases, of which we will notice a few by way of illustration.

Defective service of a writ of *scire facias* issued against an administrator to revive an action and followed

by a judgment and a sale of land by the sheriff cannot be availed of in an action of ejectment to show the judgment was void and thereby defeat the effect of the sheriff's deed. [Draper v. Bryson, 17 Mo. 71, 82.]

An order made pursuant to a statute by a county court possessing probate jurisdiction, for the reservation of the personal estate of a decedent and the sale of the realty to pay debts, is not assailable collaterally, no matter if the order was erroneous. [Overton v. Johnson, 17 Mo. 442.]

An order for a sale of land to pay the debts of an estate being attacked on the ground that the personalty was sufficient to discharge the debts, this court said, "It is not competent for the heirs in a collateral proceeding to contest the truth of the facts on which the order of sale was made." [Wolf v. Robinson, 20 Mo. 459.]

Where an execution was issued irregularly on the transcript of a judgment of a justice of the peace, a sale under it was sustained against a collateral attack. [Gorman v. Stanton, 5 Mo. App. 585.]

The question in hand was discussed rather fully and decided in Freeman v. Thompson, 53 Mo. 183, 192, where an affidavit by the printer of the publication of notice in an attachment action was attacked in a subsequent action by parol evidence to prove that, in truth, the publication had not occurred as stated in the affidavit. This court said the trial court, which had admitted evidence to contradict the affidavit, "with equal propriety could, in the same collateral way, have permitted the judgment itself to be reopened and a review had of the evidence on which it was rendered."

An administrator *de bonis non* of an estate having been appointed, and there being nothing to show the prior administrator had been discharged, it was presumed the administrator *de bonis non* had been regularly appointed and that a sale by him passed title; the rule against collateral attack being applied to support the order appointing him. [Rowden v. Brown, 91 Mo. 429.]

An appointment of an administrator *de bonis non* after a prior settlement of an estate is conclusively presumed, in a collateral case, to have been justified. [Howell v. Jump, 140 Mo. 441, 453.] And see, also, on this question, Parsons, Admr., v. Milford, Admr., 67 Ind. 489, 499, and State ex rel. Wiseman v. Wheeler, 127 Ind. 451.

The rule against collateral impeachment is applicable to all orders of the court of competent jurisdiction, as well as to its final judgment. [23 Cyc. 1056.]

The circuit court had jurisdiction of the parties and the subject-matter in the McQueen case and power to order the temporary injunction and to continue it in force pending the appeal. We hold those orders are not open to collateral impeachment by the parties to the action, or persons represented by or in privity with them, as having been collusively procured.

II. In answer to the second question we have propounded, we say the replication in this case is a collateral attack on the validity of the orders for the temporary injunction; an attack based on the allegation that they were orders procured by VanDeusen to retain himself. The petition in the present case is said by the Court of Appeals to have been filed for the purpose of having the tax bills against the relator's lot cancelled, and the apparent lien they created removed; and on the ground, as stated by the Court of Appeals, "that the work was not completed within the time prescribed by the ordinance," which was cause to remove the lien unless the delay was due to the injunction. [Construction Co. v. Field, 157 Mo. App. 577; Hund v. Rackliffe, 192 Mo. 312.] The answer set up the injunction as a defense, and the reply charged it was procured "at the instance and through the instrumentality of said contractor, and for the purpose of stopping said work, and said injunction so procured does not operate to extend the time." It is apparent the validity of the orders relating to the injunction are called into question by the reply. But this attack is not made in a direct proceeding to have the

orders vacated, to which proceeding the parties to the suit in which they were made would be necessary parties. Neither the plaintiff in the McQueen case nor the city of St. Joseph, which was one of the defendants, is a party to this case. The city was one of the parties, was bound by the orders of the circuit court and has acted on the faith of them in accepting the work and issuing tax bills to pay for it. The city would be entitled to a hearing in any suit to vacate the orders; and if they were procured by VanDeusen, and the city, instead of conniving at his act, was ignorant of it, a remedy by a suit to annul the orders and thereby prevent VanDeusen from deriving an extension of time from them, would have been available to the city; and that remedy is available to any property owner, including Williams, whose rights are affected by the extension. This action was not brought for the purpose of impeaching those orders, but for the different purpose of removing the lien of the tax bills from the relator's lot. A collateral attack is an attempt to impeach a judgment, whether interlocutory or final, in a proceeding not instituted for the express purpose of annulling the judgment. [Lieber v. Lieber, 239 Mo. 1, 55; 17 Am. & Eng. Law (2 Ed.), p. 848.] The impeachment of the injunction orders may be necessary in order for the plaintiff to obtain the relief he asks, but nevertheless, the present attack on them is collateral, and not direct. [23 Cyc. pp. 1062, 1063, and cases cited in note 67.]

III. We find it is unnecessary to answer the first part of the third question asked: namely, whether the owners of lots against which tax bills were issued were represented by the city in the McQueen case, and are bound by the proceedings therein as being in privity with the city. In our opinion the status of the plaintiff Williams as owner by a subsequently acquired title, of the lot sought to be relieved from the assessment, controls the decision of this case. Conceding for the purpose of the decision that Williams was a stranger

to the McQueen proceedings, as judgments operate usually only among the parties to the actions wherein they are given and those in privity with the parties, the inquiry is:  Can Williams as a stranger impeach collaterally those proceedings in view of the fact that he acquired his title after final judgment had been given therein, the work finished and the tax bills issued?

It may be allowed that the owner of a lot against which a special tax has been levied, who acquired title after the levy, has as much right to sue to establish the invalidity of the tax as he would have had if he had been the owner at the time of the levy.    [Hamilton, Special Assessments, sec. 744, p. 737.]  This is because the tax lien follows the property into the hands of any subsequent owner, and is not a personal charge against the person who was the owner at the time the tax was laid.    [Lasbury v. McCague, 56 Neb. 220, 228; State, Evans v. Mayor and Common Council of Jersey City, 35 N. J. L. 381.]  It was so held in the cited Nebraska case where a lot had been assessed for the cost of abating a nuisance on it, which nuisance had been created by the city itself; wherefore, the cost of abating it could not be taxed against the property, and a subsequent purchaser sued to declare invalid the special tax.

But in the present case the plaintiff asks that the special tax against his lot be set aside for a reason that results in calling into question collaterally the validity of the proceedings in a prior suit of which the court had jurisdiction.  If there had been no injunction issued in the McQueen case against VanDeusen and the city of St. Joseph, and, nevertheless, Van Deusen had failed to complete the improvement in time, Williams might well maintain this action to cancel the tax bills for the delay; but in doing so, as matters stand, he must either first have the orders for the injunction annulled in a direct proceeding or be entitled to attack them in this proceeding.  The case is complicated by those orders, and therein differs from the common suit to cancel assessments.

One cannot doubt that Williams acquired his lot with full knowledge of the tax lien and of all that had happened in the McQueen proceeding, including the procurement of the temporary injunction, since he began this suit the day after his deed was delivered to him. Perhaps his knowledge of those facts is not material, the essential fact being that he took title after the final disposition of the McQueen case. VanDeusen had completed his contract within the time limited, allowing for the interruption due to the injunction issued in the McQueen case, which was valid on the face of the proceedings, and could only be shown to be invalid by evidence *aliunde*. Williams had no right or interest which was impaired by the orders relating to the injunction at the time they were made, and on principle and according to the few authorities we have found, he is not in a position to impeach the orders. There are decisions directly in point that a person who was a stranger to a judgment, but who acquired subsequently the title asserted to be affected by it, cannot assail the judgment collaterally. [Hogg v. Link, 90 Ind. 346; Johns v. Pattee, 55 Iowa, 665.] Why should he be permitted to do so when he was in no way damaged by the adjudication? A person whose interest in property is impaired or questioned by legal proceedings at the time they are taken, and who could have been made a party to them and afforded the opportunity to defend his rights, may well be allowed to impeach the proceedings, without first attacking them directly, when it is sought to enforce them against him or his property. Whereas, a person who acquires later, especially if he knew of the proceedings, may be required to submit to their effect until he has annulled them in a suit, or other appropriate remedy instituted by him for that purpose. The general doctrine is that a conveyance in fraud of creditors cannot be set aside at the suit of a subsequent purchaser of the property, unless the intention to defraud him was entertained when the conveyance was made. This rule has been applied to judgments as

well as to conveyances. [2 Freeman, Judgments, sec. 336, p. 610.] The proposition was affirmed by this court in Abington v. Townsend, 197 S. W. 253, 257. In that case the plaintiff purchased the property in controversy at a partition sale made subsequent to a prior sale, under which the defendant claimed title. It appears one of the parties interested in the land had filed a suit to set aside the judgment in partition and the sale thereunder. The court set aside the first sale, the order approving it and the deed, but permitted the interlocutory decree for partition to stand. There was a second sale under the decree at which Abington purchased. He sought to have annulled the title of the grantee, Townsend, who claimed as stated, under the first sale. It appears Townsend was not made a party to the suit to set aside the first sale; yet, nevertheless, in his suit to quiet title Abington undertook to impeach the order approving the sale under which Townsend claimed, by evidence to show the approval of it was procured by fraud. This court held that if Abington was not in privity with the parties to the suit wherein the first sale was ordered, he was precluded from a collateral attack on the proceedings in that case even if he were a stranger, because he obtained his title subsequently to the judgment. While conceding the rule was that a stranger to judicial proceedings might impeach them collaterally, the court held an exception to this rule existed if the stranger acquired his interest later, so that it was not affected by the judgment at the time of its rendition.

The decision of the Kansas City Court of Appeals sustaining the Williams suit is in conflict with said prior decision of this court. Wherefore, the record of said Court of Appeals will be quashed.

It is so ordered. All concur.