In re the MARRIAGE OF Darlene
Patricia CABY and Arthur
Wallace Caby.

Darlene Patricia CABY, Respondent,

v.

Arthur Wallace CABY, Appellant.

No. 17707.

Missouri Court of Appeals,
Southern District,
Division One.

·Feb. 27, 1992.

Francis J. Siebert, Scott City, for appellant.

Curtis G. Hanrahan, Division of Child Support Enforcement, Jefferson City, for respondent.

CROW, Judge.

Arthur Wallace Caby ("Arthur") moved the trial court to "set aside" a garnishment for child support allegedly owed his putative ex-wife, Darlene Patricia Caby ("Darlene"), and to declare invalid the amount of child support arrearage calculated by the Division of Child Support Enforcement ("DCSE") of the Missouri Department of Social Services. The trial court, in a judgment containing meticulous findings of fact, denied relief. Arthur appeals. We synopsize only the facts pertinent to his assignments of error.[1]

On February 13, 1971, Arthur and Darlene ostensibly married each other. The union produced two offspring, Tonya[2] Lynn Caby, born November 8, 1971, and

1. The record on appeal does not contain everything necessary to verify all the facts. We take some of them from the trial court's findings, assuming they are correct where unchallenged either party.

2. This name also appears as "Tanya" in the record.

Danielle Nicole [3] Caby, born August 30, 1979.

On August 9, 1984, the Circuit Court of Stoddard County ("the trial court") entered a decree dissolving the marriage and ordering Arthur to pay Darlene child support for Tonya and Danielle in the amount of $740 per month and all "future increases in his military retirement."

In February, 1987, Darlene had an execution and garnishment issued to collect allegedly delinquent child support totaling $1,911.

In April, 1987, Arthur filed a motion to modify, seeking a reduction in child support. In May, 1987, Arthur filed a motion to quash the execution.

In July, 1987, a document whereby Darlene assigned her support rights to the State of Maryland was filed in the trial court by Maryland officials, Darlene having been granted "AFDC benefits" for the children.

On September 4, 1987, the trial court entered judgment (a) reducing child support to $200 per month per child, (b) denying Arthur's motion to quash the execution, (c) declaring him delinquent in child support in the sum of $3,708.84 as of the end of August, 1987, and (d) ordering the garnishee Department of the Navy to pay the sum withheld by it to the clerk of the trial court. Arthur appealed from this judgment, but the appeal was ultimately dismissed.

On September 22, 1987, the clerk of the trial court received $1,502.01 from the garnishee pursuant to the February garnishment. The clerk sent the sum to Donald Rhodes, Darlene's lawyer. He deposited it in his trust account.

On October 23, 1987, the trial court entered an order allowing Rhodes a $500 fee to be paid from the garnishment proceeds, together with reimbursement for $10.67 court costs.

By letter dated June 28, 1990, an official of DCSE informed Arthur he owed $4,179.84 child support as of that date. As a result, warned the letter, his state tax refund would be taken to apply against the arrearage.

On September 19, 1990, the Circuit Court of Stoddard County, in a separate suit styled *"Arthur W. Caby, Plaintiff v. Darlene P. Caby, Defendant,"* number CV490–399CC, entered a judgment stating, in pertinent part:

> The Court finds that at the time of the marriage of Arthur W. Caby and Darlene P. Caby, February 13, 1971, Darlene P. Caby was married to her first husband, David Lee Summers, and, therefore, the marriage of Arthur W. Caby and Darlene P. Caby was null and void from its inception.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT, the marriage of Arthur W. Caby and Darlene P. Caby is declared null and void from its inception.

On March 13, 1991, Arthur filed a three-count motion in the trial court. He later withdrew the first count, hence we are concerned with only Counts II and III.

Count II averred, insofar as pertinent here, that the February, 1987, garnishment was invalid "in that the underlying judgment on which it was based is void." Count II further pled that approximately $1,500 of the garnishment proceeds was being held by lawyer Rhodes. Count II prayed the court to order Rhodes [4] to pay Arthur the amount garnished, "together with all interest earned on said money."

Count III alleged DCSE had on past occasions intercepted Arthur's income tax refund and was alleging he owes child support of approximately $4,250. Count III further pled DCSE's determination was invalid "in that the amount of child support arrearages are based upon a void judgment." Count III prayed the court to declare DCSE's determination of arrearage invalid and to enjoin DCSE "from collecting any part of the purported [arrearage]."

---

3. This name also appears as "Nichole" in the record.

4. Rhodes and DCSE were evidently added as parties March 13, 1991.

The trial court conducted an evidentiary hearing on Counts II and III. Arthur testified he is the father of Tonya and Danielle, and he acknowledged he has a duty to support Danielle.[5] Arthur stated he will maintain an assignment of $200 per month from his "military retirement" to pay child support for Danielle.

It was stipulated that at the time of the hearing, Rhodes was holding "$1,500 in escrow."

As to Count II, the trial court held:

The issue of who is entitled to the proceeds of the garnishment was decided adversely to [Arthur] by the ... judgment [of September 4, 1987, denying his motion to quash the execution and ordering the garnishee to pay the sum withheld by it to the clerk of the trial court], and [Arthur] is bound by that judgment. *The State of Maryland is entitled to receive the balance of $991.34, and any accrued interest, that is being held by Donald Rhodes.*

As to Count III, the trial court held:

The issues of [Arthur's] liability for child support and the amount thereof were determined by the original decree which was rendered on August 9, 1984, in accordance with the written separation agreement of the parties.... Upon motion of [Arthur], the amount of child support was reduced by a judgment rendered on [September 4], 1987. ... He is precluded from relitigating the issues of his liability to pay child support and the amounts previously ordered. He is bound by the prior determinations unless and until there is a subsequent modification as to future payments. The judgment rendered ... September 19, 1990, in ... CV490–399CC does not invalidate the judgments for child support previously rendered in this case. The ... judgments requiring [Arthur] to pay child support ... are not void. [Arthur] has not proved that any determination by the State of Missouri of an arrearage in child support is invalid; or that he is entitled

to an injunction against the State of Missouri, or any of its agencies.

The judgment provided, insofar as pertinent here:

IT IS ... ORDERED, ADJUDGED AND DECREED that Count II of [Arthur's] ... motion be and it hereby is denied; and that, when this judgment becomes final, Donald Rhodes pay $991.34, and any accrued interest that he has, to the State of Maryland....

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Count III of [Arthur's] ... motion be and it hereby is denied.

Arthur's brief presents two points relied on:

### I.

The trial court erred in honoring a garnishment, calculated and collected pursuant to a decree dissolving a marriage later declared void from it's [sic] inception.

### II.

The trial court erred as a matter of law in finding child support may be calculated pursuant to a decree dissolving a marriage later declared [void] from it's [sic] inception.

■ Arthur begins his argument by citing *LaPresto v. LaPresto,* 285 S.W.2d 568 (Mo.1955). It sets forth the general rule that a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity or binding effect in any collateral proceeding. *Id.* at 570[2]. However, a judgment which is void on the face of the record is entitled to no respect, and may be impeached at any time in any proceeding in which it is sought to be enforced or in which its validity is questioned by anyone with whose rights or interests it conflicts. *Id.*

---

5. In an order entered May 14, 1990, the trial court found Tonya had become emancipated

and terminated Arthur's child support obligation for her.

As we comprehend Arthur's argument, he does not contend the dissolution decree is void on the face of the record.[6] Instead, he maintains the dissolution decree and the 1987 order reducing child support were "annulled" by the judgment in CV490–399CC declaring the marriage "null and void from its inception."

Arthur's theory, as we grasp it, is that inasmuch as he was never married to Darlene, the trial court lacked "subject matter jurisdiction" when it entered the dissolution decree in that "there was not a marriage before the court." Consequently, reasons Arthur, (a) the dissolution decree is void, (b) the execution and garnishment were invalid, as a void decree cannot support an execution and garnishment, (c) the 1987 order reducing child support is void, being based on the void dissolution decree, and (d) DCSE's determination of child support arrearage is invalid, as it is based on the void decree and the void modification order.

We begin our study of Arthur's hypothesis by noting the difference between the two types of attack on judgments: direct and collateral. A direct attack is one the sole object of which is to deny and disprove the apparent validity of the judgment. *Jefferson City Bridge & Transit Co. v. Blaser*, 318 Mo. 373, 300 S.W. 778, 780[2] (1927). A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment. *State ex rel. Van Hafften v. Ellison*, 285 Mo. 301, 226 S.W. 559, 562–63[4] (banc 1920). *See also: G.H. Kursar, D.O., Inc. v. Fleischer*, 602 S.W.2d 870, 874[9] (Mo.App.1980).

We find nothing in the judgment in CV490–399CC purporting to affect, invalidate or annul the dissolution decree or any provision in it, or any subsequent order entered by the trial court. The judgment in CV490–399CC declares only that the marriage of Arthur and Darlene was null and void from its inception. The judgment sets forth no consequences of that adjudication and mentions no other decree or order.

Additionally, nothing in the record before us indicates Arthur contended in CV490–399CC that the trial court lacked subject matter jurisdiction when it entered the dissolution decree. We therefore hold the judgment in CV490–399CC is not a judgment in an action directly attacking the dissolution decree for lack of subject matter jurisdiction (or on any other ground).

Because CV490–399CC is not a *direct* attack on the dissolution decree, and because there has been no showing that the dissolution decree is void on the face of the record (and hence subject to *collateral* attack), we reject Arthur's contention that the dissolution decree—and consequently the 1987 order reducing child support—have been rendered void by the judgment in CV490–399CC.

However, even if that judgment were considered a direct attack on the dissolution decree, the attack would fail to invalidate the child support order in the decree, and that is all we are concerned with here.

◼ "Subject matter jurisdiction" is authority to determine the general question involved; if a petition states a case belonging to a general class over which the court's authority extends, the court has subject matter jurisdiction. *In re Marriage of Neal*, 699 S.W.2d 92, 94[6] (Mo. App.1985); *In re Marriage of Panich*, 672 S.W.2d 718, 720[2] (Mo.App.1984).

Here, the question of child support was before the trial court when it entered the 1984 dissolution decree. As we have seen, that question was resolved per a written agreement between the parties. Arthur makes no contention that the trial court

---

6. Arthur failed to include the decree in the record on appeal. Where an appellant omits a pertinent document from the record on appeal, we may assume it is unfavorable to him and that is why he omitted it. *Board of Regents of Southwest Missouri State University v. Harri-* *man*, 792 S.W.2d 388, 393–94[8] (Mo.App.1990); *Daniels v. Griffin*, 769 S.W.2d 199, 201[5] (Mo. App.1989). Accordingly, even if Arthur meant to argue the decree is void on the face of the record, we would reject the argument as unsupported by the record.

lacked in personam jurisdiction over him when it entered the dissolution decree.[7]

In regard to Arthur's duty to support Tonya and Danielle, the Supreme Court of Missouri decided in 1968, before either of those children were born, that illegitimate children have a right equal with that of legitimate children to require support by their fathers. *E.M.R. v. G.E.R.*, 431 S.W.2d 152, 154[2] (Mo.1968). Therefore, whether Arthur was ever married to Darlene has never had any bearing on his duty to support their offspring.

At the time the dissolution decree was entered (August 9, 1984), an unwed mother could bring a declaratory judgment action against her child's putative father, seeking an adjudication of paternity and an order for child support. *K.D.R. v. D.E.S.*, 637 S.W.2d 691, 694[2] (Mo. banc 1982). Accordingly, had Arthur and Darlene never gone through a marriage ceremony but simply cohabited, she could have brought an action against him when they separated to establish paternity of Tonya and Danielle, and to obtain child support from him for them. The test for determining the amount of support in such an action would have been the same as in the dissolution proceeding. *B— v. B—*, 673 S.W.2d 819, 823–24 (Mo.App.1984).

Furthermore, even now paternity is not an issue between Arthur and Darlene. At the evidentiary hearing that preceded the judgment appealed from here, Arthur solemnly admitted siring Tonya and Danielle.

In sum, had Arthur demonstrated prior to the 1984 dissolution decree that he was never lawfully married to Darlene, he would nonetheless have had an obligation to support their children, which could have been adjudicated in a proceeding wherein he and Darlene were parties. In such a proceeding, the trial court would have had to apply the same standards for setting child support as in a dissolution action.

We therefore fail to see how the invalidity of Arthur's and Darlene's marriage divested the trial court of subject matter jurisdiction over the question of child support in the 1984 dissolution proceeding. Even if the portion of the decree ordering the marriage dissolved is now inutile because no marriage ever existed, Arthur has failed to demonstrate how this stripped the trial court of subject matter jurisdiction over the child support question. We hold the trial court had jurisdiction to adjudicate that question in 1984 whether or not Arthur and Darlene were ever lawfully wed.

As to the 1987 modification, it is obvious that in all proceedings for modification of a child support order in a dissolution decree, the parties are no longer each other's spouse. Consequently, we fail to see how the invalidity of Arthur's and Darlene's marriage could invalidate the 1987 order reducing child support.

For the foregoing reasons, we reject Arthur's theory that the judgment in CV490–399CC invalidates the child support order in the dissolution decree and the 1987 order reducing child support.

The trial court correctly ruled that the issue of who is entitled to the proceeds of the 1987 garnishment was adjudicated by the 1987 judgment denying Arthur's motion to quash the execution and ordering the garnishee to pay the sum withheld by it to the clerk of the trial court. As Arthur's appeal from that judgment was dismissed, such judgment has long since become final. The trial court thus properly denied Count II of Arthur's motion. Arthur's point I in this appeal is without merit.

His point II is likewise futile. His only attack on DCSE's calculation of child support arrearage is that it is based on a dissolution decree dissolving a marriage later declared void from its inception.

We have already held the invalidity of the marriage did not nullify the child support order in the dissolution decree or the

---

**7.** It is the general rule that where a litigant appears before a court to challenge its jurisdiction over the subject matter, he thereby confesses the court's jurisdiction over his person. *State ex rel. Auchincloss, Parker & Redpath, Inc. v. Harris*, 349 Mo. 190, 159 S.W.2d 799, 805[5] (1942).

1987 order reducing child support. Accordingly, Arthur's point II fails.

In the argument portion of his brief, Arthur asserts the record reflects no finding by the trial court that Darlene's first husband is not the father of Tonya and Danielle. Because this complaint does not appear in either of Arthur's points relied on, we need not consider it. Appellate review is restricted to the issues presented in the appellant's points relied on, and they alone need be considered. *Pruellage v. De Seaton Corp.,* 380 S.W.2d 403, 405[3] (Mo. 1964); *Smith v. Welch,* 611 S.W.2d 398, 399[1] (Mo.App.1981). Nonetheless, we call Arthur's attention to the passage in the trial court's judgment reciting that Arthur acknowledged paternity of the children in open court.

Furthermore, paternity has never been in issue, hence the trial court has never been called upon to adjudicate paternity. An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983); *School District of Kansas City v. Smith,* 342 Mo. 21, 111 S.W.2d 167, 168 (1937).

Arthur's second point is denied.

Judgment affirmed.

PREWITT, P.J., concurs.

PARRISH, J., concurs in result.