**Regina Edna WALTON, Respondent,**

v.

**Eugene D. WALTON, Appellant.**

**No. WD 41788.**

Missouri Court of Appeals,
Western District.

March 13, 1990.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
April 24, 1990.

Application to Transfer Denied
June 19, 1990.

David A. Burns, Kansas City, for appellant.

Regina Edna Walton, pro se.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

The marriage between Regina Walton and Eugene Walton was dissolved on May 20, 1988. The court ordered Eugene Walton to pay Regina Walton $300.00 per month maintenance, divided certain property between the parties and ordered Eugene Walton to pay Regina Walton $2,695.00, part of her attorney's fees. The court also

overruled Regina Walton's motion to hold Eugene Walton in contempt for failure to pay temporary maintenance of $500.00 per month, pursuant to an order of October 7, 1987.

On December 22, 1988, Regina Walton filed her "First Amended Motion and Application to Cite and Hold [Eugene Walton] in Contempt of Court." In the motion Regina Walton alleged that Eugene Walton failed to pay the October 15, 1987, temporary maintenance award and the May 20, 1988, awards of maintenance and partial attorney fees.

Eugene Walton filed his response on January 3, 1989, admitting that all of the orders described in the motion had been entered by the trial court and that he had not complied with any of the orders. He denied that his non-compliance was willful and stated that his non-payment was due to the fact he had insufficient funds to comply with those orders.

On March 4, 1989, a hearing on Regina Walton's motion was held wherein Eugene testified that he had made no payments because he is a full-time Prophet of the Restored Church of Jesus Christ and as such does not work outside the church. He testified that he was forbidden, by the commandment of God, to enter the business world to make additional income. He also testified that he owns no property, has no bank accounts and receives a stipend of $17.50 per week from the church to pay for incidental expenses. Eugene stated that all funds are held by the Church and controlled by vote of the membership, that because the church was in poor financial condition, its members voted not to provide him with the money necessary to comply with the trial court's orders to pay maintenance and attorney fees. Eugene Walton testified that he had not transferred property to Regina Walton pursuant to the dissolution decree because the church owned that property, that he had no control over it and the church had decided not to give the property to Regina because she was considered a transgressor against the laws of God.

Following the hearing, Eugene Walton was found to be in contempt and committed to jail until such time as he paid the sums due. Concerning the property, the court likewise found Eugene in contempt for failure to turn said property over to Regina. Eugene was committed to jail until such time as he complied with the order.

Eugene Walton was incarcerated in the Jackson County Detention Center from March 14, 1989, until September 6, 1989, at which time he was released pursuant to a supersedeas bond. It is from the Judgment of Contempt and Warrant for Commitment that Eugene appeals.

It is worthy of note that this is not Eugene Walton's first time before this court. On March 21, 1989, this court issued its decision in *Walton v. Walton,* 769 S.W.2d 162 (Mo.App.1989), Eugene's direct appeal from the underlying dissolution decree. The trial court's award of maintenance and attorney fees was upheld, but the award of household goods and certain other property was reversed in that such property was found to have been validly conveyed to the church. On remand a revised judgment was entered consistent with the appellate decision.

■ In his Point I, Eugene Walton argues that the trial court abused its discretion by imprisoning him for contempt because he was financially unable to pay the required maintenance and attorney's fees. Eugene argues that he only receives a stipend of $17.50 per week from his church. It is Eugene's position that he is forbidden, by the commandment of God, to enter the business world to make additional income.

Trial courts are empowered to punish by imprisonment for contempt the failure of a person to comply with orders for payment of maintenance and child support. *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567, 575 (Mo. banc 1976). Imprisonment for contempt can also be used to enforce a dissolution decree requiring a party to pay the other party's attorney's fees. *Haley v. Haley,* 648 S.W.2d 890, 891–92 (Mo.App.1982). Before ordering imprisonment the trial court should be convinced that the person is financially able to make the required

payments or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court orders. *State ex rel. Stanhope*, 533 S.W.2d at 575.

The trial court found Eugene Walton to have the ability to work and earn sufficient income to pay the maintenance and attorney's fees as ordered, but that he willfully and intentionally disobeyed the orders. Eugene's only defense in this regard was that he was forbidden, by the commandment of God, to enter the business world to make income in addition to the $17.50 per week that he was allowed by his church.

■ The family is not beyond regulation in the public interest as against a claim of religious liberty. *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). Only the religious freedom to believe is absolute; freedom to act remains subject to regulation for the protection of society. *Hester v. Barnett*, 723 S.W.2d 544, 558 (Mo.App. 1987). The state may justify an inroad on religious liberty by showing that a regulation is the least restrictive means of achieving a compelling state interest. *Penner v. King*, 695 S.W.2d 887, 890 (Mo. banc 1985).

Even if, in the case at bar, enforcing the court's order for the payment of maintenance and attorney's fees could be considered an inroad on religious liberty, the state has ample justification. It is of the utmost importance for the state to maintain a system that strives for the orderly and civilized dissolution of a family unit. When that unit is dissolved, the state is rightfully concerned that all parties be treated fairly and be given an opportunity, to the fullest extent possible, to continue their lives in an independent fashion without the assistance of public funds to maintain a decent standard of living.

A motion for civil contempt is addressed to the sound discretion of the trial court, and the reviewing court will not disturb such a judgment in the absence of a clear abuse of discretion. *Hoog v. Hoog*, 545 S.W.2d 303, 306 (Mo.App.1976). There was no such abuse of discretion by the trial court in the case at bar. Point I is denied.

■ In Point II, Eugene Walton argues that the motion for contempt was improperly before the trial court because it alleged failure to pay $500 per month temporary maintenance as ordered on October 15, 1987. It is Eugene's position that Regina is collaterally estopped from relitigating the issue of whether he is in contempt for failure to pay the $500 per month because this question was presented previously to the dissolution court by way of motion for contempt which was overruled in the May 20, 1988, dissolution decree.

In the decree it was specifically stated that "[Regina's] motion to hold [Eugene] in contempt for failure to pay October 7, 1987, ordered temporary maintenance is overruled." The court, however, also found Eugene Walton to be in "technical contempt" of the October, 1987, order to pay temporary maintenance but stated, "this court perceives no purpose being served by seeking to employ any sanctions for husband's non-compliance through this date."

Eugene seemingly overlooks the above language wherein the court did indeed find him to be in technical contempt but found no purpose in imposing sanctions for noncompliance through that date. He relies on the doctrine of collateral estoppel which precludes the relitigation of previously adjudicated issues.

The issue of the alleged contempt for failure to pay the ordered temporary maintenance had not, as Eugene Walton claims, been ruled against Regina Walton such that she was collaterally estopped from subsequently filing a motion for contempt. Under the circumstances herein, the order for $500 per month temporary maintenance still stands and at the time of Regina's second motion for contempt was yet to be paid. Although previously the court found no purpose to be served by sanctions for contempt, it cannot be said that at a different time the circumstances would be such that a purpose would be served by a contempt citation, which was obviously the finding herein. It further cannot be said

that the finding of contempt was improper. Point II is denied.

In Point III, Eugene Walton argues that the judgment of contempt insofar as it cites his failure to transfer property pursuant to the decree of dissolution has been rendered moot by the decision of this court in *Walton v. Walton,* 769 S.W.2d 162 (Mo.App. 1989).

In *Walton,* this court held that certain property distributed to the parties in the divorce decree in fact were validly conveyed to the Church. Therefore, the portion of the property division which awarded Regina and Eugene such property was reversed. The judgment was subsequently revised in accordance with the *Walton* decision.

It is significant that the decision in *Walton* was handed down by this court on March 21, 1989, some seven days after the judgment of contempt was entered on March 14, 1989. The divorce decree was corrected by revised judgment on June 30, 1989.

To the extent that the judgment of contempt was based on the failure of Eugene Walton to transfer property, which was held in *Walton* to belong to the Church, it is invalid. Eugene Walton need not transfer said property in accordance with that judgment in order to purge himself of the contempt. That is not to say, however, that the judgment is invalid as there is sufficient basis otherwise to allow the judgment to stand. Point III is overruled.

■ In Point IV, Eugene Walton argues that the contempt order failed to state a factual basis for the finding of contempt with sufficient particularity. It is his position that the trial court failed to set forth what he did or did not do on or after the May 20, 1988, dissolution decree and, therefore, the judgment is rendered a mere conclusion and does not support the Warrant for Commitment.

Eugene correctly cites the case of *Roark v. Roark,* 723 S.W.2d 439, 440 (Mo.App. 1986), for the proposition that a judgment or commitment order in a contempt proceeding which fails to recite facts and circumstances which constitute the offense, but merely states legal conclusions, cannot stand. A comparison of that case with the one at bar reveals that the cases are distinguishable. In the present case the trial court found, in summary, that Eugene Walton was physically able to make the required payments by virtue of his ability to work and earn income, that he had the present financial ability to work and earn income, that he had the present financial ability to satisfy his arrearage or to obtain the means by which said arrearage could be satisfied, and that Eugene failed to present adequate facts to excuse his non-compliance and inability to comply. The judgment and warrant for commitment herein unlike the case in *Roark* represents more than mere legal conclusions and is, therefore, sufficient. Point IV is overruled.

■ In his fifth and final point, Eugene Walton alleges that the trial court abused its discretion by commenting, on the record, as to his religious beliefs.

The record reveals that the trial court did comment, prior to pronouncing judgment, but that the comments do not indicate that the judge injected his own religious beliefs. Rather, the comments taken in the context in which they were made indicate merely an assessment of the evidence and do not constitute reversible error. Point V is overruled.

The judgment of the trial court is affirmed.

All concur.