Brian Brown ("Father") appeals the judgment ordering him to pay Kristine Barr ("Mother") $1,136 per month in child support, $5,068 for Mother's birth expenses, and to submit to random drug testing in connection with his visitation rights as provided in a consent judgment. We have reviewed the briefs of the parties and the record on appeal and find no error of law. An extended opinion would be of no precedential value. We have, however, provided the parties with a brief memorandum opinion setting forth the reasons for our decision. We affirm the judgment pursuant to Rule 84.16(b).

**In Re: Steven W. BROWN, Petitioner.**

**No. ED 76928.**

Missouri Court of Appeals,
Eastern District,
Writ Division One.

Feb. 29, 2000.

John A. Ross, Micki Wochner, Clayton, for Calzona Hall.

Steven E. Spoeneman, St. Louis, for Dale Brown (a/k/a Dale Dallas).

## OPINION

### LAWRENCE G. CRAHAN, Judge.

Steven W. Brown, ("Father"), petitioned this court for a writ of habeas corpus contending his incarceration for contempt of court is illegal. Father argues in his amended petition that the judgment of contempt and order of commitment are invalid because the trial court failed to specifically find that he has the present ability to purge himself of contempt by paying the court-ordered child support, medical bills and attorney's fees. He also alleges the judgment and order are invalid because they do not set forth the facts and circumstances that constitute the contempt on his part. We agree and order Father discharged.[1]

The marriage of Father and Dale Mary Dallas, f/k/a Dale Mary Brown, ("Mother"), was dissolved on February 28, 1991. In the dissolution decree, Father was or-dered to pay $200.00 per month to Mother for the support of the minor child born of the marriage, in addition to the child's medical and dental expenses. On February 5, 1996, the decree was modified to increase the child support obligation to $705.60 per month. Father made the required monthly support payments until October of 1997 and thereafter made only partial payments on his obligation. As a result, Mother obtained a garnishment against Father's wages and bank account in an effort to collect the monies owed.

On December 28, 1998, Father filed a motion to modify the decree to decrease the amount of his monthly child support obligation alleging a substantial and continuing change in his financial circumstances. In response, Mother filed a motion for contempt alleging Father had failed to pay the child support and medical expenses as ordered in the amended decree. On April 20, 1999, a hearing was held before the Honorable Thea A. Sherry. The court took up Mother's motion for contempt, but refused to hear Father's motion to modify as Father had failed to obtain service of process on Mother prior to that date.

After both Mother and Father testified, the court found Father in contempt for failing to pay $8,180.09 in back child support, $4,928.20 in medical and dental expenses, and ordered Father to pay $3,651.30 for Mother's unpaid attorney's fees. The court issued a warrant and commitment order sentencing Father to the St. Louis County Department of Justice Services, subject to work release privileges, until he purged himself of contempt by paying $13,108.29 for the arrearage of child support and medical expenses.

■ In his petition for a writ of habeas corpus,[2] Father does not challenge the

---

1. We previously ordered Father discharged by a summary order issued on December 3, 1999. This opinion supplements that order.

2. Father's petition alleges his attorney was killed in an automobile accident shortly after he was imprisoned, thus necessitating the pro se filing of his petition. While there are certain infirmities contained within the petition, we are able to ascertain the relevant allegations necessary to obtain relief under Rule 91

finding of contempt. Rather, he maintains the judgment of contempt and order of commitment are invalid because they fail to specifically find that he has the present ability to pay the court-ordered child support, medical expenses and attorney's fees.[3] He also alleges the judgment and order are facially invalid because they do not set forth the facts and circumstances that constitute the contempt on his part.

In order for a contempt judgment and commitment to be valid, the trial court must make findings regarding the delinquent party's ability to pay. *State ex rel. Nesser v. Pennoyer*, 887 S.W.2d 394, 397 (Mo.banc 1994). The contemnor must have the ability to purge himself to justify imprisonment for civil contempt. *State ex rel. Barth v. Corrigan*, 870 S.W.2d 458, 459 (Mo.App.1994). Otherwise, the coercive purpose for civil contempt is frustrated as the contemnor has no key to the jailhouse door. *Id.*

Further, the law requires both the judgment and commitment order to set forth facts and circumstances which constitute contempt. *Id.; Yalem v. Yalem*, 801 S.W.2d 439 (Mo.App.1990). The failure of the trial court to set forth with particularity the facts and circumstances of father's conduct which constitute contempt renders the court's finding a mere conclusion insufficient to support an order of commitment. *Roark v. Roark*, 723 S.W.2d 439, 441 (Mo.App.1986); *Hunt v. Moreland*, 697 S.W.2d 326, 328 (Mo.App.1985).

In the present case, several deficiencies and inconsistencies appear from the face of the record which necessitate a finding that the judgment of contempt and order of commitment are invalid. The pre-printed forms used by the trial court were general in nature and required the court to fill in blanks and cross out information as necessary. Paragraph 8 of the judgment of contempt, as amended by the court, states as follows:

8. Husband/Wife has failed to make support payments as ordered by the Court in the Decree for the months of October 1997 – April 1999 for an arrearage of $8,180.09.

a. Husband has been financially able to make the Court ordered payments, in that Husband received $10,948.94 from the refinancing of his real property located at # 12 Breezy Knoll Lane, Lake St. Louis, Missouri on or about February 5, 1999.

Although the judgment has additional pre-printed statements which could be checked off and specific information listed concerning the nature of the contemptuous conduct by Father, i.e., placing himself in a position in which he could not pay or divesting himself of assets, neither of these sections was marked in the present case.

The order of commitment also states that Father is $13,108.29 in arrears for his child support obligation. However, in contrast to the judgment of contempt, the order states that the court "found Respondent [Father] is financially able to make the required payments but placed himself in a position so that he could not comply with the Court order and has presented no facts that would indicate an intent to comply with the Court order, to excuse his failure to comply, to prove an inability to comply with said order to show cause." It further states that "the court finds Respondent [Father] willfully, intentionally, contumaciously disobeyed this Court's or-

---

of the Missouri Rules of Civil Procedure. Accordingly, Mother's motion to dismiss and/or strike Father's petition is hereby denied.

**3.** Father also contends that no evidence was presented to the trial court that he in fact has the present ability to pay the lump sum of $13,108.29 and further, that his testimony at the hearing directly refuted the possibility of any such finding. We do not consider this contention because in a petition for a writ of habeas corpus, as opposed to a direct appeal, the legality of the civil contemnor's restraint may be considered only insofar as it can be determined from the face of the record. *Ex Parte Ryan*, 607 S.W.2d 888, 892 (Mo.App. 1980); *Roark v. Roark*, 723 S.W.2d 439, 442 (Mo.App.1986).

der to pay support and is in civil contempt of the Court order rendered on February 5, 1996."

The inconsistency and insufficiency of the court's findings in this case is illustrative of the problem inherent in using a pre-printed form to render judgment in civil contempt cases. Although the court was required only to find that Father either had the present ability to pay his obligation, or that he intentionally and contumaciously placed himself in a position where he could not do so, the findings as written in the present case accomplish neither.

In the judgment of contempt, the court purported to justify its finding of civil contempt by stating that Father "has been" able to comply with the amended decree during the relevant times because he received $10,948.94 on February 5, 1999. The problem with such a conclusionary statement is three-fold. First, the statement that Father received money in February 1999 is facially insufficient to support the finding that he was financially able to make the payments since October 1997, but refused to do so. Rather, the finding that Father "has been" able to pay implicity suggests that he is no longer able to do so, because of some specific event or circumstance. However, the court delineated no such additional findings in this case. There were no findings in the judgment of contempt concerning Father's past income level, his other financial obligations, or whether he divested himself of assets so that he could not pay.

Second, the finding that Father "has been" financially able to pay does not equate to a finding that Father has the *present* financial ability to make the payments as required or, more importantly, to purge himself of the judgment of contempt. *See Teefey v. Teefey*, 533 S.W.2d 563, 566–67 (Mo. banc 1976). The court had the option in its form to state that Father "is" able to pay the money, but the court specifically crossed that word out. It made no other mention that the money is currently existing and available to Father, no finding regarding his current income, his other financial obligations, or more specifically, what other assets he holds in order to purge himself of the payments for which he was found to be delinquent. To require Father to make a lump sum payment of over $13,000 without finding specific facts which will support the conclusion that Father has present ability to do so is legally insufficient. *Mischeaux v. Hais*, 939 S.W.2d 49, 51 (Mo.App.1997).

Finally, the finding in the judgment of contempt conflicts with the statement in the order of commitment that Father "is" financially able to make the required payments but has placed himself in a position that he could not comply with the Court order. As with the judgment of contempt, no specific facts were included in the order of commitment to support a finding of his present ability to meet his financial obligations or to purge himself of the contempt. It is well established that the contemptor must have the ability to purge himself to justify imprisonment for civil contempt. *State ex rel. Barth v. Corrigan*, 870 S.W.2d 458, 459 (Mo.App.1994). And, obviously, purging by one who has the money but refuses to pay is different from purging by one who denuded himself of assets and now cannot pay. *Id.* The record is facially insufficient to support the court's finding of present ability and does not establish that Father's imprisonment for civil contempt was justified.

The petition for Writ of Habeas Corpus is granted. The writ is issued, made absolute, and Father is ordered discharged.

PAUL J. SIMON, J., Concurs.

RICHARD B. TEITELMAN, P.J., Concurs.