Linda Lucille (Sloop) LYONS,
Respondent,

v.

David Bruce SLOOP, Appellant.

No. WD 58434.

Missouri Court of Appeals,
Western District.

Feb. 13, 2001.

**4**

Seth D. Shumaker, Kirksville, for appellant.

Edward Leon Campbell, Kirksville, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, JOSEPH M. ELLIS, Judge and EDWIN H. SMITH, Judge.

ELLIS, Judge.

David Sloop (Father) appeals from two separate judgments of civil contempt and the two warrants for commitment issued in conjunction with those judgments. One judgment of contempt was issued in response to a motion filed by the Adair County Prosecutor's Office on behalf of the Division of Child Support Enforcement relating to Father's failure to pay child support. The other judgment of contempt was issued in response to a motion filed by Linda Lyons (Mother) for Father's failure to comply with a court order that he reimburse her for medical expenses incurred for the benefit of the children.

During their marriage, Father and Mother had two children: Angela Sloop, born on August 23, 1976, and Laura Sloop, born on February 28, 1979. On August 12, 1988, the Circuit Court of Adair County entered its decree dissolving the marriage. Mother was awarded custody of the two children, and Father was ordered to pay child support in the amount of $162.50 per child each month.

On October 24, 1994, the Circuit Court modified the original decree and changed Father's child support obligation to $270.14 per month for both children. Father was also ordered to pay $9,310.40 in medical expenses that had been incurred on behalf of the children.

On February 24, 1998, Mother filed a Motion for Contempt against Father for his failure to pay another $5,338.96 in medical expenses incurred by her on behalf of the two children subsequent to the circuit court's October 1994 modification. Mother alleged that Father had willfully failed and

refused to pay those amounts as mandated under the divorce decree.

On November 23, 1998, the Adair County prosecutor's office filed a Motion for Contempt on behalf of the Division of Child Support Enforcement ("Division") seeking back child support payments of $1,155.91. The Division also sought $825.35 in medical expenses that remained unpaid from the Court's October 1994 order. On January 21, 1999, the trial court heard argument on the Division's motion, but no judgment was ever entered on that motion by the trial court.

Mother's motion for contempt was also set for hearing on January 21, 1999. After the Division's motion was heard and taken under advisement, the court took up Mother's motion. At that time, Mother and Father notified the court that they had agreed to the entry of a consent judgment under which Father would be required to pay a total of $5,000 to Mother on or before March 15, 1999. On March 31, 1999, the trial court entered its Judgment on Motion for Contempt against Father in accordance with the stipulation of the parties.

On June 2, 1999, the prosecutor's office filed another Motion for Contempt on behalf of the Division requesting that Father be held in contempt for failure to pay back child support and for the medical bills remaining unpaid from the circuit court's October 1994 modification. The Division's motion sought payment of the money previously sought in the November 23, 1998 motion in addition to child support payments due and owing from that date through June 2, 1999.

On June 22, 1999, Mother filed another Motion for Contempt alleging that Father had willfully failed to comply with the Judgment on Motion for Contempt entered by the court on March 31, 1999. Mother requested that Father be held in contempt of court for failing to pay her the $5,000 he was ordered to pay in that judgment.

The trial court scheduled the Division's motion for contempt and Mother's motion for contempt to be heard back-to-back on February 2, 2000. In the course of the first hearing, in support of the Division's claim, the prosecutor admitted the transcript of the January 21, 1999 hearing and Mr. Sloop's payment history into evidence. He also amended the amount of delinquent child support payments to $4,937.87 and the amount of unpaid medical expenses from the 1994 judgment to $310.40. During the hearing on Mother's motion, Mother and Father both testified and various financial records were admitted into evidence.

On March 13, 2000, the trial court granted the Division's motion for civil contempt and entered its Judgment and Order of Contempt against Father. In conjunction with that judgment, the court issued a Warrant for Commitment ordering the Adair County Sheriff to take Father into custody, commit him to the county jail, and to confine him there until he purged himself of the contempt by payment of $2,980.01 in child support arrearage incurred from February 1, 1999, through February 1, 2000.

Also on March 13, 2000, the trial court granted Mother's motion for civil contempt and entered its Judgment on Motion for Contempt finding that Father had contemptuously failed to pay the $5,000 judgment previously entered in favor of Mother. In addition, the court found that Father should pay interest on that amount and Mother's attorney's fees. In conjunction with that judgment, the court also issued a Warrant for Commitment ordering the Adair County Sheriff to take Father into custody, commit him to the county jail, and to confine him there until he

purged himself of the contempt by payment of $5,000 to Mother.

Father raises four points on appeal. Two of his points relate solely to the trial court's judgment and order of commitment on the Division's motion. One of his points relates solely to the court's judgment and order of commitment on Mother's motion. The remaining point challenges the court's rulings relating to both motions.[1]

■ Father first challenges the trial court's ruling on the Division's motion. In one of his points, Father claims the trial court erred in granting the Division's June 2, 1999 motion because a docket entry from January 21, 1999, stated that the consent judgment entered between Mother and Father on Mother's motion was entered "in settlement of all issues before the court." That docket entry states:

> Pet. appears in person. Attys Tony Jones & Ed Campbell appear on behalf of Pet. on their respective motions. Resp. appears in person & by atty Seth Shumaker. Evidence heard on Atty Jones' Motion, Atty Campbell's Motion & Resp's Counter Motion. At close of evidence parties enter into stipulation whereby Resp agrees to pay Pet. $2500.00 on or before 2–15–99 & $2500.00 on or before 3–15–99 in settlement of all issues before the court. Costs taxed equally to parties. JMO.

Father contends that this docket entry constitutes a judgment on the Division's motion and that the Division cannot now reargue the same issues contained in its original motion.

This argument is disingenuous at best. First, the judgment of civil contempt and order of commitment issued on the Division's motion found Father in arrears for child support payments due from February 1999 through February 2000. Arrearages for this period of time could not have been before the court on **January 21, 1999.** Moreover, at the start of the February 2, 2000 hearing, the court noted that no judgment had ever been entered in regard to the Division's prior motion. Father's attorney made no effort to contradict that statement. Point denied.

■ In his next point, Father claims the trial court erred in finding him in contempt of the court's October 24, 1994 Judgment for any amounts due after August 1998 because Mother and the children had failed to supply him with the documentation required under § 452.340.5, RSMo. Cum.Supp.1998. Father argues that the failure by Mother or the children to comply with the statutory requirements mandates reversal of the trial court's judgment and order of commitment.

■ In general, a parent's child support payments may be terminated when the child on whose behalf they are paid reaches the age of eighteen. *Morton v. Myers*, 21 S.W.3d 99, 105 (Mo.App. W.D.2000). Under Section 452.340.3, the obligation of a parent to make child support payments terminates when the child reaches the age of eighteen unless the provisions of subsection 4, relating to a child who is physically or mentally incapacitated from supporting him or herself, or subsection 5, relating to a child continuing to pursue secondary or higher education, apply. Angela Sloop turned eighteen on August 23, 1994, and Laura Sloop turned eighteen on February 28, 1997. The record does not indicate that either child was physically or mentally

---

1. On appeal, Mother has filed a response and argued in opposition to Father's points related to the judgment on her motion. No brief was filed and no argument was offered by the State in response to Father's challenges to the court's judgment and order of commitment on the Division's motion.

incapacitated from supporting herself after that date, and therefore, in order for the children to have remained eligible for child support after their eighteenth birthday, they had to fall within the provisions of § 452.340.5. That section provides in relevant part:

> If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.

§ 452.340.5, RSMo Cum.Supp.1998.

▉ While this section does not mandate providing the non-custodial spouse with all this documentation to receive child support for the first semester of the child's higher education endeavors,[2] in order to remain eligible for child support in the second semester and each subsequent semester, a child is required to comply with the specified reporting requirements in § 452.340.5. *In re Marriage of Kohring,* 999 S.W.2d 228, 233–34 (Mo. banc 1999). "In other words, after the first semester, for the child to continue receiving child support, the statute requires the child to provide each parent with a transcript provided by the institution that showed: (1) the courses enrolled in; (2) the courses completed for each semester; (3) the grades and credits received for each completed course; *and* a transcript from the institution listing for the upcoming semester: (1) the courses enrolled in and (2) the number of credits for each course." *Morton,* 21 S.W.3d at 106–07. This documentation provides the parents with sufficient information to determine whether the non-custodial parent is still required to support his or her child through college.

In issuing its judgment of contempt and its order of commitment on the Division's motion, the trial court found that Father was in contempt of the October 1994 judgment because he was in arrearage in the amount of $2,980.01 for support payments due for the period between February 1, 1999, through February 1, 2000.[3] The court found that "[Father]'s argument that [Mother] is not in compliance with Section 452.340.5 is not persuasive nor determinative so far as either party's obligations under the order of October 24, 1994."

---

2. In order to receive continued support during the first semester, the child is only required to provide the parent with proof of enrollment. *In re Marriage of Kohring,* 999 S.W.2d 228, 233–34 (Mo. banc 1999).

3. The circuit court made no finding regarding the Division's allegations related to Father's arrearage for the period prior to February 1999 or the money that remained to be paid on the medical bills included in the October 1994 judgment.

To the extent the trial court found that § 452.340.5 was not relevant to determining Father's obligation to pay child support under the divorce decree, the court misinterpreted and misapplied the law. Any obligation that Father had to continue to make child support payments to the children subsequent to their eighteenth birthdays had to derive from § 452.340.5. Thus, in order to find that Father had a continuing obligation to pay child support and that he was in arrears on those payments, the trial court needed to make a finding that the provisions of § 452.340.5 had been satisfied. Since the court made no such finding and, indeed, found that "compliance with Section 4542.340.5 is not . . . determinative," the judgment of contempt and order of commitment entered on the Division's motion must be reversed and remanded for consideration of those issues. For the sake of judicial economy, we make the following observations that the trial court may find helpful on remand.

■■ First, it is undisputed that Angela Sloop turned twenty-two on August 23, 1998. Accordingly, at the very latest, Father's parental support obligation for Angela terminated by statute on that date. However, when, as here, the monthly child support has been ordered to be paid for more than one child as a lump sum, "the obligor owes that amount until all the children are emancipated and cannot reduce the amount owed pro rata as the children reach majority without the prior approval of the court." *Ogden v. Henry*, 872 S.W.2d 608, 611 (Mo.App. W.D.1994). Father never filed a motion for reduction of his child support obligation following Angela's emancipation. Therefore, Father's obligation to continue paying the full amount rests on whether Laura was entitled to continued support under § 452.340.5.

From the evidence submitted at the hearing, it appears that Laura Sloop had been attending Moberly Area Community College since her graduation from high school. Father asserted that he did not receive the documents required under § 452.340.5 after August 1998. The trial court failed to make any finding regarding if and when Father was properly provided with the requisite documentation.

■ On remand, the trial court will need to make findings regarding when, if ever, Mother or Laura provided Father with the required documentation and, if necessary, to recalculate the amount owed by Father. Section 452.340.5 "contemplate[s] proof of eligibility for parental support on a term-by-term or semester-by-semester basis." *In re Marriage of Kohring*, 999 S.W.2d at 233. A child's failure to comply with the statutory requirements in one or more semesters relieves the parent of his or her obligation to provide child support during that semester, however, it does not relieve the parent of the responsibility for future payments. *Id.* at 234. "To the extent that daughter compli[ed] with the statutory preconditions for subsequent terms or semesters, she remains eligible for parental support until she completes her college education or she reaches the age of twenty-two, whichever first occurs." *Id.* Accordingly, the trial court may need to determine whether the requirements of § 452.340.5 were met for each semester Laura was attending college after August 1998 in order to make appropriate findings.

In his next point, Father contends the trial court erred in finding him in contempt of the March 31, 1999 Judgment related to past medical bills because the children had failed to comply with the documentation requirements of § 452.340.5. He argues that any obligation he had to pay any arrearage for past medi-

cal bills or any other past due child support terminated when the children failed to provide him with that documentation. He asserts that the failure to comply with the documentation requirement of § 452.340.5 resulted in the emancipation of the children prior to the entry of the March 31, 1999 judgment and that emancipation terminated his obligation to pay any past due support. This argument fails on all fronts.

First, in this point, Father attempts to challenge the validity of the judgment entered by the trial court on March 31, 1999. That judgment was entered with Father's consent in accordance with an agreement between Father and Mother. " 'As a general rule, the validity of a judgment may only be impeached in an action by a formal appeal.' " *Gaunt v. State Farm Mut. Auto. Ins. Co.,* 24 S.W.3d 130, 139 (Mo.App. W.D.2000) (quoting *Travis v. Contico Int'l, Inc.,* 928 S.W.2d 367, 369 (Mo.App. E.D.1996)). Father did not appeal from the March 31, 1999 judgment, and that judgment became final after thirty days. Rule 81.05(a)(1). Father's attempt to challenge the validity of that judgment at this time constitutes an impermissible collateral attack on that judgment.[4] " 'A judgment rendered by a court having jurisdiction of the parties and subject matter ... is not open to collateral attack in respect of its validity or conclusiveness of the matters adjudicated.' " *Shockey v. Curtis,* 971 S.W.2d 320, 323 (Mo.App. S.D.1998) (quoting *State ex Inf. Voigts v. City of Pleasant Valley,* 453 S.W.2d 700, 704 (Mo.App. W.D.1970)). Therefore, the judgment of March 31, 1999, is conclusive with regard to Father's obligation, and Father may not attack the validity of that judgment in this proceeding.

Furthermore, even if the issue was properly before this court, Father's argument is wholly without merit. The emancipation of a child does not extinguish the obligation of a parent to pay any amount of child support in arrearage at the time of emancipation. *See, Coleman v. Coleman,* 823 S.W.2d 6, 7–9 (Mo.App. E.D. 1991). The legislature has established a ten-year statute of limitations applicable to the recovery of unpaid child support which runs from the time that a particular payment was due. *Id.* at 8 (citing § 516.350).

On February 24, 1998, Mother filed her Motion for Contempt against Father for his failure to pay $5,338.96 in medical expenses that had been incurred prior to that date for which Father was obligated to pay under the dissolution decree. On January 21, 1999, Father agreed to the entry of a consent judgment under which he would pay $5,000 of those expenses. On March 31, 1999, the trial court entered the consent judgment submitted to it by the parties. The judgment entered by the court clearly related to medical bills for which Father was in arrears prior to the time at which Father claims the children became emancipated. Even if the children became emancipated after August 28, 1998, as alleged by Father, the amounts reflected in the March 31, 1999 judgment were for amounts in arrears prior to the alleged date of emancipation, and emancipation would not have extinguished Father's obligation to pay those delinquent amounts.

Moreover, the failure to provide a parent with the documents required by

---

4. " 'A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment.' " *Shockey v. Curtis,* 971 S.W.2d 320, 323 (Mo.App. S.D.1998) (quoting *In re Marriage of Caby,* 825 S.W.2d 56, 59 (Mo.App. S.D.1992)).

§ 452.340.5 does not result in the emancipation of the child. *In re Marriage of Kohring,* 999 S.W.2d at 234. As noted, *supra,* a child's failure to comply with the statutory requirements in one or more semesters relieves the parent of his or her obligation to provide child support during that semester, however, it does not relieve the parent of the responsibility for future payments. *Id.* The failure to comply with the document provisions of § 452.340.5 does not result in the emancipation of the child and does not excuse a parent from paying a support obligation which is already in arrears prior to the child's failure to comply with those provisions. Point denied.

Finally, Father claims the trial court erred in entering both judgments of contempt and their respective orders of commitment because they do not contain a finding that he has the present ability to pay the amount owed. Father argues that in order to have him imprisoned for civil contempt, the trial court was required to find that he had the present ability to purge himself of the contempt.

■ A trial court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear abuse of discretion. *Garner v. Hubbs,* 17 S.W.3d 922, 929 (Mo.App. S.D.2000). " 'The judgment must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law.' " *Id.* (quoting *Gerau v. Gerau,* 927 S.W.2d 441, 443 (Mo.App. E.D.1996)).

As a preliminary matter, we note that we need not address this argument as it applies to the judgment and commitment order issued on the Division's motion. We have already decided that judgment and order must be reversed, as discussed *supra.* Therefore, our analysis will focus solely on Father's argument as it relates to the judgment and order of commitment issued on Mother's motion.

■ In making his argument, Father improperly applies the same standards to the judgment of contempt that he does to the order of commitment. But the findings necessary to support a judgment of contempt are different from those necessary to support an order of commitment:

[I]n a civil contempt proceeding based on failure to pay money pursuant to a court order, two stages precede commitment. The first is an adjudication of the question of contempt. The party seeking an order of contempt must show the alleged contemnor failed to make the required payment. Thereupon, absent the alleged contemnor proving he or she lacked the ability to make those payments, a judgment of civil contempt may be entered. *State ex rel. Barth v. Corrigan,* 870 S.W.2d 458, 459 (Mo.App.1994).

The second stage is a determination of how the contemnor may purge himself or herself of the contempt. In that respect, if the contemnor is to be imprisoned, in order to assure he or she has the means to secure release, "[t]he contemnor must have the ability to purge himself of his contempt." *State ex rel. Foster v. McKenzie,* 683 S.W.2d 270, 270 (Mo.App.1984). Otherwise, imprisonment for civil contempt is not justified. *Id.*

*State ex rel. Div. of Family Services v. Bullock,* 904 S.W.2d 510, 513–14 (Mo.App. S.D.1995). From the foregoing, it is apparent that the first step in our analysis is determining whether the judgment of contempt was proper.

■ " 'A prima facie case for civil contempt is established when a party alleging contempt proves: 1) the contemnor's obligation to pay a specific amount or perform an action as required by the de-

cree; and 2) the contemnor's failure to meet the obligation.' " *Garner*, 17 S.W.3d at 929 (quoting *State ex rel. Missouri Dam and Reservoir Safety Council v. Rocky Ridge Ranch Property Owners Ass'n*, 950 S.W.2d 925, 928 (Mo.App. E.D.1997)). Mother presented a prima facie case here by showing that Father had not paid the $5,000.00 that he had been ordered to pay under the March 31, 1999 judgment. *See, State ex rel. Watkins v. Watkins*, 972 S.W.2d 609, 611 (Mo.App. S.D.1998).

 Once a prima facie case of contempt is established, the alleged contemnor bears the burden of proving that he is financially unable to pay and that the inability to pay is not the consequence of his own intentional and contumacious conduct. *State ex rel. Nesser v. Pennoyer*, 887 S.W.2d 394, 396 (Mo. banc 1994); *Brown v. Brown*, 670 S.W.2d 167, 170 (Mo.App. W.D.1984); *Garner*, 17 S.W.3d at 929. " 'In a proceeding for civil contempt for noncompliance with orders in a dissolution of marriage judgment, the contemnor has the more ready access to any facts to excuse the default,' " and " '[t]hus, the contemnor bears the burden to prove that non-compliance was not an act of contumacy.' " *Watkins*, 972 S.W.2d at 611 (quoting *Wisdom v. Wisdom*, 689 S.W.2d 82, 85 (Mo.App. W.D.1985)). Therefore, once Mother established her prima facie case, Father bore the burden of proving that he was unable to pay the $5,000.00 and that his inability to do so was not the result of his own intentional and contemptuous conduct. *Id.*

In its judgment of contempt, the trial court specifically found that Father had failed to meet this burden. The court found that Father had not proven that he was unable to pay the $5,000.00 and that he failed to show any justifiable cause for not complying with the court's Judgment of March 31, 1999. The court also noted

that "[t]here was substantial evidence presented by [Mother] that [Father] had divested himself of assets, had substantial employment income and simply engaged in conduct to avoid payment of the Judgment." These findings are supported by the evidence and are not against the weight of the evidence. The trial court did not err in finding Father in contempt for failure to comply with the March 31, 1999 judgment.

In the second step of our analysis, we must determine whether the trial court's order of commitment was proper. The Missouri Supreme Court last addressed this issue in *State ex rel. Nesser v. Pennoyer*, 887 S.W.2d 394 (Mo. banc 1994). In setting forth the standards for commitment, the Court stated:

> Although a person normally may not be imprisoned for contempt of an order directing payment of money, § 511.340 RSMo 1986, a person may be incarcerated for failure to comply with an order prescribing maintenance and child support payments. *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575 (Mo. banc 1976). Before an order of commitment may issue, the trial court must determine that the debtor has either the ability to pay or intentionally created a situation of noncompliance. *Id.* ... Once the creditor establishes a failure to pay, the debtor must come forward with proof of inability to pay that is not due to the debtor's own conduct. *A.G. v. R.M.D.*, 730 S.W.2d 543, 546 (Mo. banc 1987). If the court finds the debtor has intentionally violated its payment order, it may then enter a judgment of contempt and issue an order of commitment.

*Id.* at 396.

Based upon this language, Mother argues that a trial court is justified in issuing an order of commitment where either: (1) the contemnor has the present ability to

pay the money owed, or (2) the contemnor intentionally created a situation under which he or she could not comply with the previous court order.[5] This position has some support in the case law. *See Goss v. Porter,* 928 S.W.2d 902, 903 (Mo.App. E.D. 1996) (quoting *Pratt,* 533 S.W.2d at 575) ("Where imprisonment for civil contempt is contemplated a motion court 'should be convinced that the person is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders.' "); *Walton v. Walton,* 789 S.W.2d 64, 66–67 (Mo.App. W.D.1990) ("Before ordering imprisonment the trial court should be convinced that the person is financially able to make the required payments or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court orders.").

However, *Pennoyer* goes on to state that "[c]ommitment may only be ordered for acts capable of being performed by the contemnor." *Pennoyer,* 887 S.W.2d at 396 (citing *Zeitinger v. Mitchell,* 244 S.W.2d 91, 98 (Mo.1951)). The court held that the commitment order was invalid for failing to address the father's ability to pay delinquent child support and stated that "[w]ithout such a finding, there is no basis for commitment." *Id.* at 397.

Latching on to this language, the Eastern District of this court has issued a series of opinions which have held that commitment is only proper where the trial court specifically finds that the contemnor has the present ability to pay the judg-

ment and thereby purge himself of the contempt. *See State ex rel. Barth v. Corrigan,* 870 S.W.2d 458, 459 (Mo.App. E.D. 1994); *Mischeaux v. Hais,* 939 S.W.2d 49, 50 (Mo.App. E.D.1997); *In re Brown,* 12 S.W.3d 398, 401 (Mo.App. E.D.2000). In *Corrigan,* the court explained its reasoning as follows:

> The contemptor must have the ability to purge himself to justify imprisonment for civil contempt. Otherwise the coercive purpose for civil contempt is frustrated as the contemptor has no key to the jailhouse door. . . . Obviously purging by one who has the money but refuses to pay is different from purging by one who has denuded himself of assets and now cannot pay.

*Corrigan,* 870 S.W.2d at 459. Based upon this reasoning and the language of *Pennoyer,* the Eastern District has held that in order for a commitment requiring payment of a lump sum to be valid, the trial court must make findings regarding the delinquent party's present ability to pay the amount reflected in the judgment. *Mischeaux,* 939 S.W.2d at 50.

Mother has not presented us with any compelling reason to deviate from the course set by the Eastern District. We hold, therefore, that in order to support an order of commitment, a trial court must make a finding that the contemnor has the present ability to purge himself of the contempt and thereby has the key to the jailhouse door. Otherwise, the court must set forth a different method for the contemnor to purge himself of the contempt. *Bullock,* 904 S.W.2d at 514.

---

5. Mother argues that the second element was established through evidence presented at trial that Father had intentionally transferred most of his assets to his live-in girlfriend of ten years, chosen not to work for pay, and had engaged in other conduct to avoid paying this and other judgments. Mother argues

that the trial court's finding that there was substantial evidence that "[Father] had divested himself of assets, had substantial employment income and simply engaged in conduct to avoid payment of the Judgment" should be sufficient to support Father's commitment.

With this holding in mind, we next examine the trial court's findings in the case at bar to determine whether they were sufficient to warrant commitment. In its Judgment on Motion for Contempt, the trial court found:

That [Father] has failed and refused to pay the Five Thousand Dollars ($5,000.00) ordered by this Court to be paid to [Mother] despite [Father]'s knowledge that said sum was due to [Mother] pursuant to the stipulation of the parties presented to the Court on January 21, 1999 and [Father]'s specific agreement that [Father] would pay said sum to [Mother]. That [Father] has been financially capable of making the Court ordered payment of Five Thousand Dollars ($5,000.00) to [Mother] and [Father] has willfully failed to do so.

\* \* \*

[Father] did not present clear and convincing evidence that [Father] was unable to comply with the Court's Order and did not show any justifiable cause for not complying with this Court's Judgment on Motion for Contempt entered upon the specific agreement and stipulation of [Father]. To the contrary, there was substantial evidence that [Father] has had the financial ability to pay the Five Thousand Dollars ($5,000.00) ordered to be paid to [Mother] and that [Father] has simply failed and refused to do so. There was substantial evidence presented by [Mother] that [Father] had divested himself of assets, had substantial employment income and simply engaged in conduct to avoid payment of the Judgment.

The Court finds pursuant to Sec. 452.365 (RSMo.1973) that [Father] has willfully failed and refused to comply with the Judgment on Motion for Contempt entered by this Court and that

[Father] should be found in contempt of this Court's Order.

\* \* \*

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that [Father] is guilty of contempt of this Court by reason of [Father]'s failure to comply with the provisions of this Court's Order of March 31, 1999 in that [Father] failed to pay the Five Thousand Dollars ($5,000.00) to [Mother] that [Father] was ordered to pay to [Mother] by this Court and that [Father] specifically agreed to pay to [Mother] in open Court by way of stipulation of the parties and that this failure of [Father] to pay [Mother] has impeded, impaired and prejudiced the rights of [Mother].

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Father] be committed by the Sheriff of Adair County, or the Sheriff of such other county in this state where [Father] may be found, to the county jail in that county to be detained in custody until [Father] has paid the sum of Five Thousand Dollars ($5,000.00) in full or has been otherwise discharged according to law.

\* \* \*

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that a Warrant for Commitment shall issue with a copy of this Judgment.

In that Warrant for Commitment, the Court included the following findings:

On the 13th day of March, 2000, a Judgment on Motion for Contempt was duly made and entered in the above-captioned case by which it was ordered that [Father] was and is in contempt of this Court for failure to pay [Mother] the sum of Five Thousand Dollars

($5,000.00) pursuant to this Court's Order of March 31, 1999.

\* \* \*

The Court further found that [Father] had failed and refused to pay the Five Thousand Dollars ($5,000.00) ordered by this Court to be paid to [Mother] despite [Father]'s knowledge that said sum was due to [Mother] pursuant to the stipulation of the parties presented to the Court on the 21st day of January 1999 and [Father]'s specific agreement that [Father] would pay said sum to [Mother] on or before March 15, 1999.

The Court further found that [Father] did not present sufficient evidence to substantiate that [Father] was unable to comply with the Court's Judgment and [Father] did not show any justifiable cause for not complying with this Court's Order and, to the contrary, there was substantial evidence that [Father] had the financial ability to pay the Five Thousand Dollars ($5,000.00) ordered to be paid to [Mother] and [Father] simply failed and refused to do so. There was substantial evidence presented by [Mother] that [Father] had divested himself of assets, had substantial employment income, and simply engaged in conduct to avoid payment of the Judgment. The Court found that [Father] did not make any effort to pay the Judgment, but, to the contrary, intentionally and purposely avoided complying with the Court's Order.

The Court's order of the 13th day of March, 2000, establishes that the Court believed [Father] failed to meet his burden in establishing that [Father] was not able to comply with the Court's Order and that, if anything, [Father] placed himself in a position so that [Father] could not comply with the Court's Order and that [Father] presented no evidence that would indicate an intent on the part

of [Father] to comply with the Court's Order. That [Father] willfully, intentionally and contemptuously disobeyed the Court's Order for [Father] to pay Five Thousand Dollars ($5,000.00) to [Mother] and [Father] is in civil contempt of the Court's Order of March 31, 1999.

While the trial court's findings certainly hint at Father's ability to pay Mother the $5,000.00 owed on the judgment, the court couched its findings in the past tense. The court found that Father "had" or "has had" the ability to pay the amount owed to Mother. Such findings were found insufficient in *In re Brown*, 12 S.W.3d 398, 401 (Mo.App. E.D.2000). *In re Brown* held that a "finding that Father 'has been' financially able to pay does not equate to a finding that Father has the *present* financial ability to make the payments as required or, more importantly, to purge himself of the judgment of contempt." *Id.* "To require Father to make a lump sum payment … without finding specific facts which will support the conclusion that Father has present ability to do so is legally insufficient." *Id.* (citing *Mischeaux*, 939 S.W.2d at 51). For the same reasons, we conclude that the trial court's findings in the case at bar were insufficient to support the order of commitment.

■ In *Mischeaux*, the Eastern District held that the trial court's findings were insufficient to support commitment where no findings were "made regarding what Father's income is, what his other financial obligations are, whether he had divested himself of assets, nor what other assets father holds in order to purge himself of the payments that he was found to be delinquent on." *Mischeaux*, 939 S.W.2d at 51. These are the types of findings that must be made in order to justify commitment, as well as a specific finding regarding how contemnor may

presently purge himself of the contempt. Certainly, the evidence before the trial court in this case would have supported a finding that Father has the present ability to pay Mother the $5,000.00. During his testimony, Father admitted to owning a gun collection, a coin collection and other assets valued well in excess of the amount owed to Mother. Furthermore, the record reflects that Father has the ability to work and has either chosen not to work at all or has refused to draw any salary from the company he owns although he is apparently willing to pay all his personal bills from corporate accounts. Based on the evidence presented at the hearing, the trial court would certainly not have abused its discretion if it had entered a finding that Father had the present ability to purge his contempt.[6] However, no such finding was made in the judgment or order of commitment, and we must, therefore, remand the case to the trial court for further proceedings.

For the foregoing reasons, the judgment and order of commitment on the Division's motion is reversed and remanded with directions that the trial court make findings regarding Father's continued obligation for child support after the minor children's eighteenth birthdays and for such other proceedings not inconsistent with this opinion. The judgment and order of commitment on Mother's motion is also reversed and remanded for a determination of Father's present ability to pay the $5,000.00 or otherwise purge himself of his contempt relating to the March 31, 1999 Judgment and for such other proceedings not inconsistent with this opinion. "If fa-

ther is found capable of purging himself of contempt by paying the total arrearage within a reasonable time, the trial court may re-enter its original order. If not, the trial court may consider other methods, within father's means, by which he may purge himself of the adjudged civil contempt." *Bullock*, 904 S.W.2d at 514.

All concur.

---

6. *See Walton v. Walton*, 789 S.W.2d 64, 68 (Mo.App. W.D.1990) (holding the trial court made sufficient findings where it "found, in summary, that [Father] was physically able to make the required payments by virtue of his ability to work and earn income, that he had the present financial ability to work and earn income, that he had the present financial ability to satisfy his arrearage or to obtain the means by which said arrearage could be satisfied, and that [Father] failed to present adequate facts to excuse his non-compliance and inability to comply").