Kimberly S. LOVE, Appellant,

v.

Karl David LOVE, Respondent.

No. WD 59268.

Missouri Court of Appeals,
Western District.

March 5, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 2002.

Application for Transfer Denied
June 25, 2002.

B. Allen Heeke, Jr., for appellant and Kimberly S. Love, Sanford, FL, pro se.

Karen "Kit" C. Warner, Liberty, for respondent.

Tammy J. Glick, Platte City, Guardian ad litem.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Kimberly S. Love (mother) appeals the judgment of the Circuit Court of Platte County modifying its decree dissolving her marriage to the respondent, Karl David Love (father), by awarding "primary" physical custody of their son, Cameron J. Love, to the father, and finding the mother in contempt.

The mother raises six points on appeal. In Point I, she claims in two subpoints that the trial court erred in entering its judgment of modification, awarding primary physical custody of the parties' minor child to the father because: (1) the court lacked jurisdiction to modify custody on any of the four permissible bases provided in § 452.450.1;[1] and (2) the court did not

1. All statutory references are to RSMo 2000, unless otherwise indicated.

make the requisite findings to support its determination of jurisdiction. In Point II, she claims that "[t]he Trial Court erred in entering an Order to Show Cause on the Respondent's Petition for Writ of Habeas Corpus because the Respondent was not entitled to a writ of habeas corpus as a matter of law in that the trial court was without jurisdiction to enter an order, the petition was defective on its face, the petition was trying to be enforced outside the jurisdictional limits of the trial court, and the Respondent had no specific right to enforce at the time it was entered." In Point III, she claims that the trial court erred in finding her in contempt for "her willful failure and refusal to allow the minor child to go to the home of the respondent at the conclusion of the child's school year on or about May 18, 2000 as required by the July 9, 1997 Judgment of Modification," and ordering her to pay $750 of the father's attorney's fees incurred in prosecuting her for contempt because the evidence was insufficient to show that she intentionally violated the circuit court's order in the respect found by the court. In Point IV, she claims that the trial court erred in modifying its decree by awarding father primary physical custody of the minor child because its decision was based on evidence not in the record in that the court in modifying its decree relied solely on the report of the GAL, which was not in evidence. In Point V, she claims that the trial court erred in modifying its custody decree to deny joint legal and physical custody to the parties and awarding sole physical custody to the father because the trial court, in doing so, failed to make requested findings concerning its reasoning for denying joint custody and because the record did not support the denial. In Point VI, she claims that the trial court erred in denying her trial counsel's request for closing argument because in doing so it violated her right to due process.

We affirm in part, and reverse and remand in part.

## Facts

The parties were married on October 28, 1989. There was one child born of the marriage, Cameron J. Love, born March 25, 1990. The mother filed a petition for dissolution of marriage in the Circuit Court of Clay County on June 27, 1994. On August 8, 1994, the father filed a motion for transfer to Platte County, which was granted on August 16, 1994. On August 26, 1994, the father filed his answer and counterclaim for dissolution of marriage. The Circuit Court of Platte County entered its decree dissolving the parties' marriage on December 16, 1994, and, *inter alia*, awarded the parties joint legal and physical custody of the minor child, with the child's primary residence to be with the mother and the parties to reside within 50 miles of downtown Kansas City, Missouri, and ordered the father to pay the mother $600 per month in child support.

On July 23, 1996, the mother informed the father that she was moving to Florida on July 28 to be with her fiancé and that she had already found a new job in Florida. She also informed the father of her intention to take Cameron to live with her in Florida and proposed that they modify their custody arrangement so that he would spend his school year during the first and second grades in Florida with her, with the summers being spent with the father, and that he would spend the school year during the third and fourth grades in Missouri with the father, with his summers being spent with her.

On August 26, 1996, the father filed a motion to modify the circuit court's custody decree awarding him primary physical custody and terminating the child support award to the mother. At the same time,

he filed a "Motion for Temporary Custody, Child Support, Restraining Order, Preliminary Injunction, Attorney's Fees, Suit Money and Costs Pendente Lite," seeking, *inter alia,* temporary custody of Cameron. On August 29, 1996, the court granted temporary custody of Cameron to the father. On October 8, 1996, the mother filed her answer and motion to modify physical custody, requesting, *inter alia,* that primary physical custody of Cameron be awarded to her and that she be allowed to move with him to Florida. On October 11, 1996, the circuit court entered a "Consent Order Modifying Temporary Custody, Visitation and Support," finding that the parties had stipulated to the father's retaining temporary custody of the minor child; abating child support to the mother; and dissolving the temporary restraining order against the mother to allow her to take Cameron to Florida for her authorized periods of visitation.

On July 9, 1997, the parties entered into a "Parenting Agreement," which provided that they would share joint legal and physical custody of Cameron as follows:

2. The parties agree that the child shall reside primarily in the home of the Mother during the summer months of June, July, and August of 1997 until the end of his summer break, at which time he will return to the home of the Father for resumption of school classes on or about August or September of 1997. Thereafter, the minor child shall reside primarily in the home of the Father until on or about the 15th day of July, 1998. The child shall then primarily reside with the Mother from on or about July 15, 1998 until the conclusion of the child's regularly scheduled school classes on or about May or June of 1999. The child shall then primarily reside with the Father through the summer of 1999 until the end of his summer break, at which time he will return to the home of the Mother for resumption of school classes on or about August or September of 1999. The child shall then primarily reside in the home of the Mother until the conclusion of the child's regularly scheduled school classes on or about May or June of 2000. The child shall then primarily reside with the Father through the summer of 2000 until the end of his summer break.

. . .

6. **FORUM SELECTION CLAUSE:** The parents specifically recite that it is their intention that they each be designated as a joint custodian for the minor child without regard that they do not each reside within the State of Missouri. They further specifically declare that so long as one of them remains a resident of the State of Missouri, that Missouri shall be deemed and declared the child's "home state" within the meaning of the Uniform Child Custody Jurisdiction Act. The parents further agree that so long as one of them continues to reside within the State of Missouri, the Circuit Court of Platte County, Missouri shall remain the exclusive forum for determining all matters pertaining to the care, custody, control and support of the child, absent an Order of that Court to the contrary. A parent seeking to invoke the jurisdiction of another Court, contrary to these recitals, shall be liable to pay the other parent's reasonable court costs, attorney's fees, and transportation costs incurred in defense of that action.

On that same day, the court entered its judgment of modification awarding joint legal and physical custody of the minor child to the parties in accordance with their agreed-upon parenting plan, which was incorporated in the judgment in its entirety, finding that it was fair and not unconscionable and that the custody arrangement provided therein was in the

best interests of the child. The court's judgment also included an arbitration provision, which had been included in the parties' parenting plan and which provided:

> 7. The parents acknowledge that this agreement contemplates a division of the child's time as between the parents only through the summer of the year 2000. The parents agree that they will commence mediation no later than by June 1, 2000 in an effort to reach a further written agreement no later than August 1, 2000 to further allocate their periods of primary custody with the child. Such mediation shall be for a minimum of two hours before a qualified mediator located in the Kansas City metropolitan area. The parents agree that they shall each pay one-half of the cost of any such mediation. If the parties are not able to reach a further written agreement by August 1, 2000, then, until further order of the court, the parents shall have primary custody of the child in alternate years, with the child residing primarily in the home of the Father in alternate years commencing at the beginning of the school year in 2000 until the end of the summer break in 2001; and with the child residing primarily in the home of the Mother in alternate years commencing at the beginning of the school year in 2001 until the end of the summer break in 2002.

Pursuant to the terms of the approved parenting plan, Cameron attended first and second grades in Kansas City, while primarily residing with his father and visiting his mother, and attended third and fourth grades in Florida, while primarily residing with his mother and visiting his father. In January of 2000, the parties, as required by the circuit court's custody decree, engaged in mediation in Kansas City in an effort to agree on an acceptable parenting plan after Cameron had completed the fourth grade. The mediation was unsuccessful.

In light of the failed mediation, on May 6, 2000, the mother sent a letter to the father informing him that she intended to file for a change of custody, seeking sole physical custody of Cameron, as well as child support. On May 9, 2000, the father sent a letter asking the mother to please reconsider further mediation and notifying her that, pursuant to the terms of the court's decree, he would be coming to Florida to pick up Cameron either on his last day of school, May 18, 2000, or the next morning, May 19. On May 15, 2000, the mother faxed a response stating that both dates were inconvenient, since Cameron had a school-related activity scheduled for May 19, 2000. The mother's letter also advised that, due to the father's "mean and nasty spirited phone calls," she was convinced that "further mediation would not work out." Finally, her letter stated that, as she read the court's decree, since they had not reached a new custody agreement through mediation, the father was not entitled to have Cameron until the "beginning of the school year 2000." The father sent a letter to her that same day, advising her that he disagreed with her interpretation of the decree since it clearly stated that Cameron was to reside with him from the end of his "scheduled school classes on or about May or June 2000 ... through the summer of 2000 until the end of the school break." He further stated that he could pick up Cameron any time between May 18 and May 25, and asked her to let him know which date was most convenient. She responded on May 18, 2000, stating that since they were not in agreement "as to the interpretation of the agreement," they should "split the difference," with Cameron remaining in Florida with her until June 30, 2000, and then

going to the father's house in Kansas City from July 1 until the beginning of school.

On May 22, 2000, the father filed a motion to hold the mother in contempt in the Circuit Court of Platte County asking the court to hold the mother in contempt for failing to relinquish custody of Cameron to him on the date ordered. At the same time, the father filed a petition for writ of *habeas corpus,* alleging that Cameron's liberty was being unlawfully restrained by his mother's refusal to release him to his father.

On May 23, 2000, the mother filed a "Motion for Court to Determine Jurisdiction, Request for Court to Decline Jurisdiction, and Allow Case to be Removed to the State of Florida." In seeking to remove the case to Florida, she alleged that Cameron had been living with her in Florida for the six months prior to the filing of her motion to modify such that Florida was now his home state under the Uniform Child Custody Jurisdiction Act (UCCJA). That same day, she filed a motion to modify custody alleging, *inter alia,* that the parties should be awarded joint legal and physical custody with primary physical custody to her during the school year. Also on that same day, the circuit court entered an "Order to Show Cause" and an "Order Granting Writ of Habeas Corpus," wherein the court ordered the mother to appear at 10:00 a.m. on June 15, 2000, and show good cause why she should not be held in contempt of court for failing to comply with the court's existing custody order and good cause why Cameron should not be delivered to the custody of the father.

On June 14, 2000, the mother brought Cameron to Missouri and relinquished his custody to the father. On July 3, 2000, the father filed his answer to the mother's motion to modify and a counter-motion to modify custody, seeking joint legal and physical custody of Cameron, with primary physical custody to him during the school year. On August 24, 2000, the father filed a motion requesting the court to appoint a Guardian *Ad Litem* (GAL) due to the mother's allegations against him of "abuse and neglect." Accordingly, the court entered an order appointing Tammy J. Glick as the GAL for Cameron on August 25, 2000.

On August 31, 2000, the court took up the mother's motion to modify custody, her motion challenging the jurisdiction of the court, the father's counter-motion to modify, and his motion for contempt. At the conclusion of all the evidence, the court gave a brief outline of its decision on the record and asked the father's attorney to prepare the judgment of modification.

On October 2, 2000, the court entered its "Judgment of Modification" finding, *inter alia,* that:

5. This Court has jurisdiction over the parties and the subject matter of this action. The State of Missouri is deemed to be the home state of the minor child because, among other things, the child currently resides in Missouri, and the child spent time in Florida only by agreement of the parties and with the intention that the child would be returned to Missouri. Furthermore, the child has significant contacts with Missouri.

. . .

7. Petitioner is found in contempt of this Court for, among other things, her willful failure and refusal to allow the minor child to go to the home of Respondent at the conclusion of the child's school year on or about May 18, 2000 as required by the July 9, 1997 Judgment of Modification, and it is reasonable to award Respondent $750.00 for partial payment of his attorney's fees incurred

to remedy such act of contempt and to assess costs against Petitioner.

8. Since the date of the Judgment of Modification, which was entered on July 9, 1997, there have been changed circumstances so substantial and continuing as to make the terms of said Judgment of Modification unreasonable in regard to the parties and their minor child, and as a result of such changed circumstances, a further modification is necessary to serve the best interests of the minor child. These changed circumstances include, but are not limited to, the following:

a. The minor child is now older and the custody arrangement as set forth in the July 9, 1997 Judgment of Modification, if allowed to continue, would not allow the child to establish roots, develop long-term friendships and establish ongoing school and social relationships by virtue of having to change his primary residence every year.

b. Based on the report of the Guardian ad Litem, the child's best interests would be served if he were placed in the primary physical custody of Respondent.

9. It is in the minor child's best interests that Respondent be awarded primary physical custody of the minor child, Cameron J. Love[.]

This appeal follows.

## Standard of Review

■ "Our standard of review in a modification of custody case is governed, as in other judge-tried cases, by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), interpreting what is now Rule 73.01(c)." *Jones v. Jones*, 10 S.W.3d 528, 532 (Mo.App.1999) (*citing McCreary v. McCreary*, 954 S.W.2d 433, 438–39 (Mo.App.1997)). "Under this standard, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (citations omitted). " 'Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence.' " *Id.* (*quoting Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996)). " 'When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears.' " *Id.* (*quoting Guier*, 918 S.W.2d at 946).

## I.

In Point I, the mother claims in two subpoints that the trial court erred in entering its judgment of modification, awarding primary physical custody of the parties' minor child to the father because: (1) the court lacked jurisdiction to modify custody on any of the four permissible bases provided in § 452.450.1; and (2) the court did not make the requisite findings to support its determination of jurisdiction. Her claims are without merit.

### A. The Trial Court's Jurisdiction Under § 452.450

Before addressing the merits of the mother's claim in this subpoint, we would first note that the mother, in claiming that the circuit court lacked jurisdiction to modify its existing custody decree, sought to remove the parties' custody dispute to the State of Florida. We know of no authority for a Missouri state court to remove a case to a state court in another state. In any event, regardless of how we characterize the procedural trail struck by the mother, our only review in this subpoint is to determine whether the trial

court had jurisdiction under the UCCJA to enter its judgment modifying custody, and if it did not, then the judgment would be rendered a nullity.

▉▉▉ The mother claims in this subpoint that the trial court lacked jurisdiction to modify the physical custody of the parties' minor child in that the record was insufficient to invoke the court's jurisdiction on any of the four permissible bases provided for in § 452.450, which sets forth the jurisdiction of a court of this state to decide child custody matters.[2] That section provides:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

§ 452.450. The four alternative bases set forth in § 452.450.1 for a Missouri court having jurisdiction to modify child custody

---

2. In their "Parenting Agreement," which was incorporated into the July 9, 1997, "Judgment of Modification," the parties agreed that "Missouri shall be deemed and declared the child's 'home state' within the meaning of the [UCCJA]." However, subject matter jurisdiction under the UCCJA "is derived from law and cannot be conferred by consent [or] agreement...." *Steele v. Steele,* 978 S.W.2d 835, 837 (Mo.App.1998) (citations omitted). "Under the UCCJA, 'jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties ... [t]he submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state.' " *Id.* (citation omitted).

are commonly referred to as: "(1) home state, (2) significant connection, (3) emergency, and (4) default or vacuum." *In re S.M.*, 938 S.W.2d 910, 917 (Mo.App.1997) (citation omitted). Logically, only one of the four alternative bases of § 452.450.1 has to be met "in order for the court to acquire jurisdiction to decide the child in question's custody." *State ex rel. In Interest of R.P. v. Rosen*, 966 S.W.2d 292, 300 (Mo.App.1998). Thus, if we find that the record would support the trial court's having jurisdiction under any one of the four alternative bases for establishing jurisdiction under § 452.450.1, the mother's claim in this subpoint that the trial court lacked subject matter jurisdiction to enter its judgment of modification must fail. In claiming that the court lacked jurisdiction to modify under § 452.450.1, the mother contends that there was insufficient evidence presented at trial from which the trial court could find that it had jurisdiction on any of the four alternative bases provided. However, because we find that the trial court had jurisdiction under § 452.450.1(1) to modify its child custody orders in that the record would support the fact that Missouri is the home state of the parties' minor child, we address the home state basis for jurisdiction alone.

"Home state," for purposes of § 452.450, is defined as:

> the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period[.]

§ 452.445(4). There is no dispute that at the time of the parties' dissolution of marriage and the 1997 judgment of modification, Missouri was Cameron's home state. However, the mother contends that Florida is now his home state in that at the time she filed her motion to modify child custody, he had resided there with her in Florida for two years, such that he was not in Missouri for at least six consecutive months immediately preceding the filing of that motion for modification and that his time in Florida was not, as the trial court found, a temporary absence from Missouri. The father contends, *inter alia*, that the trial court correctly interpreted and applied the law in finding that Cameron's time in Florida was a temporary absence such that Missouri remained his home state, invoking the court's jurisdiction under § 452.450.1(1).

The phrase "temporary absence," as used in § 452.445(4) in defining "home state," is itself not statutorily defined. However, in *In re S.M.*, this court, after discussing the various approaches used in other jurisdictions, adopted the totality of the circumstances test for deciding what constitutes a temporary absence under § 452.445(4). 938 S.W.2d at 918. Applying that test here, there is no dispute that Cameron was living with his mother in Florida pursuant to the Missouri court's 1997 judgment of custody, which embodied the custody agreement of the parties. Pursuant to the trial court's award of joint physical custody in the 1997 judgment of modification, Cameron was to primarily reside with the father from the beginning of school in the fall of 1997 until July 15, 1998, with visitation to the mother as follows: the entire period of his school Thanksgiving break, Christmas break and spring break and five consecutive days each month during which there was not already a scheduled holiday visitation. From July 15, 1998, to the last day of

school in either May or June of 1999 and from the beginning of school in August or September of 1999 to the end of school in May or June of 2000, Cameron was to primarily reside with the mother, with visitation to the father as follows: the entire period of his Thanksgiving break, Christmas break, and spring break; five consecutive days each month during which there was not already a scheduled holiday visitation; and his entire summer break. Hence, contrary to the assertion of the mother, Cameron did not reside in Florida *continuously* for the two-year period immediately preceding the filing of the custody proceeding below. During the two-year period in question, the record reflects that the child lived the first two months in Missouri with his father, and during the next 22 months, although he lived primarily with his mother in Florida during the school year, he was returning monthly to Missouri for visits with his father and spent the entire summer of 1999 in Missouri. In addition, in the court's 1997 judgment of modification there is a provision that the parties "will commence mediation no later than June 1, 2000 in an effort to reach a further written agreement no later than August 1, 2000 to further allocate their periods of primary custody with the child." From the foregoing, it is clear that the trial court and the parents contemplated that Cameron was not to remain in Florida permanently. Given the totality of the circumstances in this case, we cannot say that the trial court erred in finding that Missouri was Cameron's home state for purposes of invoking its jurisdiction to enter its judgment of modification of custody.

## B. The Sufficiency of the Trial Court's Findings as to Its Jurisdiction

■ In her second subpoint, the mother claims that the trial court was required,

but failed, to make specific findings to support its determination of its jurisdiction. In support of her claim, the mother cites us to *Piedimonte v. Nissen*, 817 S.W.2d 260, 266 (Mo.App.1991). There, the appellate court stated, in pertinent part, that:

> [i]t is implicit in the scheme of the UCCJA that the court make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody. That is because the efficacy of the UCCJA to accomplish its purpose, to avoid the harm that comes to children from competition between states for jurisdiction in custody adjudications, depends upon a judgment that is fully informed—and valid. It is only "[a] custody decree rendered by a court of this state which had jurisdiction under section 452.450" that binds the parties under the UCCJA. It is only a custody decree of a court which "ha[s] assumed jurisdiction under statutory provisions substantially in accordance with [the UCCJA], or which was made under factual circumstances meeting the jurisdictional standards of [the UCCJA]" that the courts of another state are bound to recognized and enforce. Thus, a ruling of jurisdiction by a court that is merely conclusory or that assumes jurisdiction, but is tacit as to the factual basis for that adjudication, does not meet the objectives of the Act.

*Piedimonte*, 817 S.W.2d at 266 (citations omitted). In light of the teachings of *Piedimonte*, the question for us to decide in this subpoint is whether the trial court's findings with respect to its jurisdiction contained a factual basis for its determination or whether, as the mother claims, they were merely conclusory on that issue.

In its judgment with respect to its jurisdiction, the trial court found:

This Court has jurisdiction over the parties and the subject matter of this action. The State of Missouri is deemed to be the home state of the minor child because, among other things, the child currently resides in Missouri, and the child spent time in Florida only by agreement of the parties and with the intention that the child would be returned to Missouri. Furthermore, the child has significant contacts with Missouri.[3]

While not reciting a cornucopia of facts supporting its assertion of jurisdiction, the trial court's findings in that respect are nonetheless sufficient in our eyes to comply with the standard enunciated in *Piedimonte* in that they make it clear that the court found that Cameron's absence from the state was temporary in nature in that he was only in Florida by agreement of the parties with the intent that primary physical custody was to rotate between the father and mother, pursuant to the joint physical custody plan, during which time there was to be liberal visitation with the other parent.

Point denied.

## II.

In Point II, the mother claims that "[t]he Trial Court erred in entering an Order to Show Cause on the Respondent's Petition for Writ of Habeas Corpus because the Respondent was not entitled to a writ of habeas corpus as a matter of law in that the trial court was without jurisdiction to enter an order, the petition was defective on its face, the petition was trying to be enforced outside the jurisdictional limits of the trial court, and the Respondent had no specific right to enforce at the time it was entered." The mother's claim is without merit.

In her point relied on, the mother expressly challenges the "Order to Show Cause on the Respondent's Petition for Writ of Habeas Corpus." However, the record reflects that the trial court never entered such an order by name. Rather, on May 23, 2000, the record reflects that the court entered what it denominated as "Order Granting Writ of Habeas Corpus," ordering the mother to appear before the court on June 15, 2000, "to show any cause she may have why said child should not be delivered to the custody of [the respondent], and to have the child present and delivered at that time." Regardless of how the order was denominated by the trial court, it is clear from its substantive text that it was not an order actually granting the writ, permanent or otherwise, but was an order to show cause why the writ sought by the father should not issue. This having been said, however, does not aid the mother's cause in this point.[4]

■ Even assuming, *arguendo*, that the mother is correct that the trial court erred in entering its show cause order with respect to the father's application for a writ of habeas corpus, we fail to see how this entitles her to any relief on appeal, noting that she does not tell us in her brief what relief she seeks. The issuance of a show cause order is nothing more than an indication that the trial court has found from the face of the writ application that further investigation is necessary to determine whether to grant or deny the writ and

---

3. We would note that the child's spending time in Florida was not solely by virtue of the agreement of the parties as the court's judgment states, but was, as explained, *supra*, by order of the court in its July 9, 1997, judgment.

4. Given our disposition of this point, it is not necessary to reach the issue of whether a writ of *habeas corpus* could issue from a court in this state for a person being restrained in another state.

serves as a notice to the party against whom the writ is sought to appear for the opportunity to be heard on whether the writ should issue. In that regard, the mother is arguing in this point that it should have been clear to the trial court on the face of the writ application that the writ should have been denied, on the basis that the minor child was being restrained in another state beyond the trial court's jurisdiction, such that it was error to issue the show cause order in the first instance. While the mother may be correct in her assertion that the show cause order should have never been issued, in light of the fact that a writ was never entered thereon, we fail to see how she would be entitled to any appellate relief.

■ The purpose of a show cause order is to provide notice to the party against whom the writ is sought that he or she must appear to make a defense to the writ. As such, for appellate relief to lie for an alleged error with respect thereto, the error would have to go to a determination of whether due process was provided in the actual issuance of a writ. In that regard, from the record it is clear that a hearing was never held on the show cause order and that a writ was never issued. In fact, the record reflects that the mother, prior to the scheduled hearing date for the show cause order, relinquished custody of the minor child to the father, rendering moot the issue raised by the father's application for a writ of *habeas corpus* in that the relief sought from the trial court by the writ was rendered unnecessary. *See State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001) (holding that when some event occurs prior to the resolution of a controversy, which extinguishes the controversy, the issue is moot). Because the show cause order attacked by the mother did not result in the issuance of a writ, the issue raised by the mother in this point of whether the trial court erred in entering the show cause order is moot.

Point denied.

## III.

In Point III, the mother claims that the trial court erred in finding her in contempt for "her willful failure and refusal to allow the minor child to go to the home of the respondent at the conclusion of the child's school year on or about May 18, 2000 as required by the July 9, 1997 Judgment of Modification," and ordering her to pay $750 of the father's attorney's fees incurred in prosecuting her for contempt because the evidence was insufficient to show that she intentionally violated the circuit court's order in the respect found by the court. Specifically, she claims that the court's existing custody order with respect to returning Cameron to his father after the school year in 2000 was subject to a reasonable interpretation that under the court's order, she did not have to return Cameron to his father until the beginning of the school year in the fall of 2000, rather than the last day of school, which fell on May 18, 2000.

■ As in any judge-tried case, a judgment of contempt "must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law." *Lyons v. Sloop,* 40 S.W.3d 1, 10 (Mo.App.2001) (citations omitted).

■ "A prima facie case for civil contempt is established when a party alleging contempt proves: 1) the contemnor's obligation to ... perform an action as required by the decree; and 2) the contemnor's failure to meet the obligation." *Id.* at 10–11. Once a *prima facie* case of contempt is established, the alleged contemnor bears the burden of proving that

his or her failure to act was not the consequence of his or her own intentional and contumacious conduct. *Id.* at 11. In his motion to hold the mother in contempt, the father alleged that she violated the court's order with respect to when Cameron was to be returned to the father after the 2000 school year. In that regard, the trial court's July 9, 1997, judgment of modification provided, in pertinent part, that:

2. ... The child shall then primarily reside with the Father through the summer of 1999 until the end of his summer break, at which time he will return to the home of the Mother for resumption of school classes on or about August or September of 1999. *The child shall then primarily reside in the home of the Mother until the conclusion of the child's regularly scheduled school classes on or about May or June of 2000.* The child shall then primarily reside with the Father through the summer of 2000 until the end of his summer break.

(Emphasis added.) Specifically referencing this provision of the judgment, the father, alleged in his motion for contempt:

5. That although the child's last day of school was May 18, 2000, and although Respondent has made repeated attempts to coordinate travel arrangements with Petitioner, Petitioner has willfully failed and refused to allow the child to go to the home of Respondent as required by the Judgment of Modification.

6. That prior to filing this Motion, Respondent has pursued every reasonable remedy available to him in an attempt to have Petitioner comply with said terms of the Judgment of Modification.

7. That Petitioner's willful refusal and failure to allow the minor child to go to the home of Respondent at the conclusion of the 1999–2000 school year as ordered by this Court constitutes a di-

rect, willful and deliberate violation of the Judgment.

8. Respondent has incurred attorney's fees and costs in his attempts to enforce the Judgment currently in force, and Petitioner is fully employed and capable of paying said attorney's fees and costs.

At trial, the father argued that under the court's existing custody order, the mother was required to return custody of Cameron to him on the last day of school of 2000. In that regard, it was undisputed that the last day of school was May 18 and that the mother did not return Cameron to the father until June 14, 2000. As such, the father made a *prima facie* case for contempt as alleged.

Once the father made a *prima facie* case for contempt, the burden shifted to the mother to show that she did not intentionally disobey the court's custody order as alleged. In that regard, the mother contends that she met her burden in that the circuit court's custody order was susceptible to a reasonable interpretation that did not require her to return Cameron to his father until the beginning of the school year in the fall of 2000, such that her not returning him on May 18 was not an intentional violation of the court's order. The mother's argument is without merit.

■■■■ To be enforceable, a custody decree, like any other judgment must be sufficiently definite and certain to put the parties on notice as to what is being required of them. *Foster v. Foster,* 39 S.W.3d 523, 529 (Mo.App.2001). Where the provisions of a custody decree are ambiguous and require judicial interpretation to arrive at the date upon which physical custody is to change between the parties, a party is not in contempt simply because his or her understanding, although arguably reasonable, was legally incorrect. *Id.* In other words, where the court's custody order is ambiguous and susceptible to

a reasonable interpretation other than the legally correct one, a parent acting on a reasonable interpretation other than the legally correct one, cannot be held in contempt for failing to comply with the legally correct interpretation. Thus, as framed by the mother, the issue in this point is whether the circuit court's existing custody order was ambiguous such that she could have reasonably believed that Cameron did not have to be returned to his father on May 18, 2000, as found by the trial court. Because this requires us to interpret the implicated provisions of the trial court's custody order, which is a question of law, in interpreting the trial court's custody order, our review is *de novo. Whiteman v. Del–Jen Const., Inc.,* 37 S.W.3d 823, 830 (Mo.App.2001).

■ At trial, the mother testified that she did not return Cameron to his father on May 18, 2000, the last day of school, because based on her reading of the court's custody order it was unclear what the custodial arrangements were to be in the year 2000. In that regard, she testified that it was her understanding, pursuant to paragraph 7 of the 1997 judgment of modification, the existing custody order at the time, that because the parties were unable to agree on a new custody plan, Cameron was not required to be returned to his father until the beginning of the school year in the fall of 2000. Paragraph 7 reads, in pertinent part:

> If the parties are not able to reach a further written agreement by August 1, 2000, then, until further order of the court, the parents shall have primary custody of the child in alternate years, *with the child residing primarily in the home of the Father in alternate years*

*commencing at the beginning of the school year in 2000....*

(Emphasis added.) Reading this paragraph in isolation lends some credence to the mother's argument. However, paragraph 7 must be read in conjunction with paragraph 2, which reads, in pertinent part:

> The child shall then primarily reside in the home of the Mother until the conclusion of the child's regularly scheduled school classes on or about May or June of 2000. The child shall then primarily reside with the Father through the summer of 2000 until the end of his summer break.

Reading paragraphs 2 and 7 together, as logically we must, the court's custody order is clear and unambiguous as to the father's being entitled to primary physical custody of Cameron after the last day of the 2000 school year, which fell on May 18. It is important to note that this interpretation is consistent with the way the order had been interpreted by the parties in the past. From the record, it is clear that the trial court was correct in finding that the mother had failed to carry her burden of showing that her failure to comply with the court's custody order to return Cameron on May 18 was not intentional due to the ambiguity of the order.[5]

Point denied.

**IV.**

■ In Point IV, the mother claims that the trial court erred in modifying its decree by awarding father primary physical custody of the minor child because in finding that it was in the child's best interests that primary physical custody be awarded to the father, the court relied on

---

5. Regardless of who had the burden of persuasion on the issue, the fact remains that the disputed provision of the court's custody was not ambiguous and subject to the interpretation urged by the mother.

a report of the GAL, which "did not exist." [6] Essentially, what she is claiming is that the court's best interests determination was based solely on a GAL report that did not appear of record and that it was "impossible to tell what else, if any facts the lower court relied upon in making its custody determination since the order states no other grounds."

To modify an award of custody, the court must find "upon the basis of facts that have arisen since the prior decree . . . that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1. Thus, the court's determination is two-fold. It must first find that a substantial change of circumstances has occurred and, once it does, it must then find that the best interests of the child would be served by modifying custody. *Jones,* 10 S.W.3d at 533. In determining that a substantial and continuing change of circumstances had occurred and that it was in Cameron's best interests that primary physical custody be awarded to the father, the trial court found in its judgment of modification of October 2, 2000:

> Since the date of the Judgment of Modification, which was entered on July 9, 1997, there have been changed circumstances so substantial and continuing as to make the terms of said Judgment of Modification unreasonable in regard to the parties and their minor child, and as a result of such changed circumstances, a further modification is necessary to

serve the best interests of the minor child. These changed circumstances include, but are not limited to, the following:

> a. The minor child is now older and the custody arrangement as set forth in the July 9, 1997 Judgment of Modification, if allowed to continue, would not allow the child to establish roots, develop long-term friendships and establish on-going school and social relationships by virtue of having to change his primary residence every year.
>
> b. Based on the report of the Guardian ad Litem, the child's best interests would be served if he were placed in the primary physical custody of Respondent.

There can be no doubt from the trial court's minimal findings in its judgment that, at least in part, the court, in making its best interests determination to award primary physical custody of Cameron to the father, relied on a GAL report, which the father admits was not part of the record. The father, however, contends that there was other evidence in the record that would support the court's best interests determination. Regardless, we do not reach the precise issue raised in this point inasmuch as we must reverse and remand in any event for the best interests findings required by § 452.375.6, which the trial court failed to make.

In determining best interests in a modification proceeding, the trial court is required to consider the eight factors set

---

**6.** We note that the argument portion of the mother's brief on this point relates solely to her allegations of deficient performance by the GAL in this case, and that the only authority cited by the mother, *Baumgart v. Baumgart,* 944 S.W.2d 572 (Mo.App.1997), goes to the duties of the GAL in custody cases. Thus, her claim that the court's judgment of modification was unsupported by the evidence would normally be abandoned. *In re Kreutzer,* 50 S.W.3d 334, 337 (Mo.App.2001). However, because she is acting *pro se* and because this involves the determination of custody of a child, we will review, *ex gratia,* the merits of her claim as to the court's determination that a modification of custody was appropriate. *Kanady v. Kanady,* 527 S.W.2d 704, 706 (Mo.App.1975).

forth in § 452.375.2. *Reeves–Weible v. Reeves*, 995 S.W.2d 50, 63 (Mo.App.1999). Thus, logically, the court is required to comply with § 452.375.6, which provides that where:

> the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based upon the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

Obviously, the parties, here, did not agree on a custodial arrangement, which required the trial court, in entering its judgment of modification, to make the specific findings provided for in § 452.375.6, *Haden v. Riou*, 37 S.W.3d 854, 866 (Mo.App. 2001), which the court did not do. Thus, we are required to reverse the trial court's judgment modifying the physical custody of the parties' minor child and remand the cause to the trial court to make findings in accord with § 452.375.6. *Id.* at 867.

In making the required findings under § 452.375.6, the court obviously must consider the evidence already in the record. In addition, it may, in its discretion, receive further evidence on this issue. Of course, if in making its required findings under § 452.375.6, the trial court relies to any extent on an existing report by the GAL, logically it would have to make specific findings from the report and cannot simply reference the report in general or the recommendation of the GAL, which is not binding on the court. *Dickerson v. Dickerson*, 55 S.W.3d 867, 875 (Mo.App. 2001).

## V.

In Point V, the mother claims that the trial court erred in modifying its custody decree to deny joint legal and physical custody to the parties and awarding sole physical custody to the father because the trial court, in doing so, failed to make requested findings concerning its reasoning for denying joint custody and because the record did not support the denial. The father contends that the trial court, in modifying its decree, did not deny the parties joint legal and physical custody and award sole physical custody to him, as claimed by the mother, but simply changed from alternating primary physical custody of Cameron between the parties under the joint custody plan approved, to vesting primary physical custody in the father with significant periods of physical custody to the mother. We agree.

The mother's claim that the trial court changed its prior award of joint *legal* custody to sole legal custody is not supported by the record. Nowhere in its judgment does the court make any reference to modifying its prior award of joint legal custody to the parties. The only reference to a change in custody is with respect to physical custody. Thus, under the provision in the court's judgment of modification, providing "that the Original Decree of Dissolution of Marriage as modified by the July 9, 1997 Judgment of Modification shall remain in full force and effect, except as specifically modified herein pursuant to this Judgment of Modification," the prior award of joint legal custody remained in full force and effect. As such, we are left to determine whether the trial court erred in modifying its custody decree by changing from joint *physical* custody to the parties to sole physical custody to the father, as the mother asserts in this point.

The record reflects that in both the circuit court's dissolution decree and its 1997

judgment of modification, the parties were awarded "joint legal and physical custody" of Cameron pursuant to the approved parenting plan. In its judgment of modification of October 2, 2000, the trial court "awarded primary physical custody" of Cameron to the father with "visitation" to the mother as specified. With respect to visitation to the mother, the judgment provided:

2. The child shall reside with Father at all times except for the following times when the child shall be with Mother:

a. Every summer from one (1) week after the end of the school year until one (1) week before the beginning of the next school year, except for the following times when the child shall be with Father: (i) for a period of up to five (5) days during the month of June so long as Father has provided at least a two week notice; (ii) for a period of up to seven (7) days encompassing the fourth of July week; and (iii) for a period of up to five (5) days during the month of August so long as Father has provided at least a two week notice.

b. Every Labor Day Holiday for a period of up to five (5) days, so long as the child's attendance in school is not interrupted.

c. Every year for a period of up to five (5) days during the month of October, so long as the child's attendance in school is not interrupted, and so long as Mother has provided at least a two week notice.

d. Every year for the Thanksgiving Holiday break.

e. Every year during the Christmas Holiday break, the child shall be with Father until 10:00 a.m. on Christmas Day, and Mother shall be entitled to pick up the child at 10:00 a.m. on Christmas Day and keep the child with her until January 1st.

f. Every year for a period of up to five (5) days during the month of February so long as the child's attendance in school is not interrupted, and so long as Mother has provided at least a two week notice.

g. Every year for the child's entire Spring Break.

h. Every year for a period of up to five (5) days during the month of May, so long as the child's attendance in school is not interrupted, and so long as Mother has provided at least a two week notice.

The mother contends that this custody arrangement reflects an award of sole physical custody to the father, whereas, the father contends that it reflects a joint physical custody arrangement, as defined in § 452.375.1(3),[7] with the father simply being designated as the primary physical and residential custodian. The father's read of the court's judgment would be consistent with the relief prayed for in both the mother's motion to modify and the father's counter-motion to modify. In that regard, the mother alleged in her motion that the "existing order of custody is not in the best interests of the child and although the child should remain in the joint legal custody of the parties, his primary physical custody should be vested in [the mother] pursuant to the Joint Custody Plan attached hereto...." In the moth-

7. Section 452.375.1(3) defines "joint physical custody" as:

an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]

er's attached "Proposed Parenting Plan," she recommended that "[j]oint physical custody of the child [should] be shared by the parties." In the father's motion, he alleged that the "existing order of custody is not in the best interests of the minor child, and although it is in the best interests of the minor child to remain in the joint legal custody and joint physical custody of the parties," the father should be the primary physical custodian.

Despite a trial court's using the phrase "primary physical custody" and the term "visitation" in its judgment to describe its award of physical custody of a child, our appellate courts have routinely held that a joint physical custody arrangement can still be found, provided the judgment awards significant periods of physical custody to both parents. *Babbitt v. Babbitt*, 15 S.W.3d 787, 790 (Mo.App.2000); *Stewart v. Stewart*, 988 S.W.2d 622, 624–25 (Mo.App.1999); *In re Marriage of Johnson*, 865 S.W.2d 412, 415 (Mo.App.1993); *Ibrahim v. Ibrahim*, 825 S.W.2d 391, 396 (Mo.App.1992). Equal time being spent with each parent is not required to find a joint physical custody arrangement. § 452.375.1(3); *Stewart*, 988 S.W.2d at 624 (*citing Tilley v. Tilley*, 968 S.W.2d 208, 213 (Mo.App.1998)). This proposition recognizes the fact that while a trial court may desire to split time equally between the parents under a joint physical custody plan, it many times is not in a child's best interests to do so because the child is of school age and the parents live at some distance, which would require the child to shuffle back and forth between school districts. In these instances, trial courts, desiring to award both parents the maximum time possible for having physical custody, while still observing the child's best interest, are prone to designate one parent the primary physical custodian during the school year and the other the primary physical custodian during the summer va-

cation, as was done here. In light of this fact and the fact that neither party sought a change in the joint legal and physical custody previously awarded and the trial court indicated in its judgment that "the Original Decree of Dissolution of Marriage as modified by the July 9, 1997 Judgment of Modification shall remain in full force and effect, except as specifically modified herein," we would agree with the father that the trial court did not deny joint physical custody to the mother as she asserts, but simply modified which parent was to serve as the primary physical custodian for the various specified periods of time enunciated in the judgment.

Point denied.

## VI.

■ In Point VI, the mother claims that the trial court erred in denying her trial counsel's request for closing argument because in doing so it violated her right to due process. Based on our review of the record, her claim is without merit.

The record in this case indicates that counsel was never denied the right to make a closing argument. In this regard, the record reflects that at the close of all of the evidence the following exchange occurred:

THE COURT: Okay. Okay. Anything further from any parties? Anything else?

MR. BERNSTEIN: No.

THE COURT: Because I'm going to take a short recess, then I'm going to put together what I'm going to do on this matter. And then you can—

MR. BERNSTEIN: Would—Do you want any closing statements or—

THE COURT: If you wish to make them. If there's anything you wish to add at this point.

The record indicates that neither party thereafter availed itself of the court's invitation to make closing arguments, effectively waiving the same. It goes without saying that a waiver is not the equal of a denial.

Point denied.

## Conclusion

The judgment of the Circuit Court of Platte County finding the mother in contempt is affirmed, while its judgment modifying its prior award of physical custody of the parties' unemancipated minor child is reversed and the case remanded for further proceedings in accordance with this opinion.

HOWARD and HOLLIGER, JJ., concur.